[No. E016630. Fourth Dist., Div. Two. Dec. 30, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY PECK, Defendant and Appellant.

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

COUNSEL

George A. Hunlock, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHLI, J.**—Defendant is a member of a church which uses marijuana as a sacrament. He was convicted of transportation of more than 28.5 grams of marijuana in violation of Health and Safety Code section 11360, subdivision (a), and of possession of marijuana for sale in violation of section 11359 of that code. His principal contention is that the court erred in rejecting his defense based on his right of free exercise of religion.

I

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was apprehended at the border patrol checkpoint in Temecula driving a car with 40 pounds of marijuana in the trunk. The marijuana was divided into bags of about one pound each. Cash in the amount of $2,350 was found under the dash cover. The wholesale value of the marijuana was about $40,000.

Defendant is president and a priest of the Israel Zion Coptic Church (IZCC). The IZCC has about 200 or 250 members. The IZCC is an offshoot of the Ethiopian Zion Coptic Church, commonly known as the Rastafarians.

The IZCC uses marijuana as a sacrament. The purpose of using the marijuana is to make the users aware of their sins. Typically, marijuana would be used approximately three times a day.

Defendant had grown marijuana for use in the IZCC, but had been criminally prosecuted and convicted for it. (See *State* v. *Peck* (1988) 143 Wis.2d 624 [422 N.W.2d 160].) Defendant and the other members of the IZCC then began buying small amounts of marijuana in Wisconsin for church use, but considered it too expensive. Therefore, defendant and two other members contributed a total of about $30,000, so that defendant could buy a large quantity of marijuana in San Diego, where defendant had grown up. Defendant was returning to Wisconsin when he was stopped.

The court, sitting without a jury, found defendant guilty of transportation of and possession for sale of marijuana. Although it found that a principal tenet of defendant's religion was the use of marijuana, it concluded the specific conduct for which defendant was convicted was incidental to, not an integral part of, the practice of his religious beliefs. The court sentenced defendant to five years' probation, conditioned on two hundred forty days in custody.

## II

### DISCUSSION

A. *Sufficiency of Evidence of Intent to Sell*

■ Possession of illegal drugs for sale requires that the defendant have the intent to sell the drugs. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 466 [268 Cal.Rptr. 8].) During grand jury proceedings, which the parties stipulated the court could consider at trial, a sheriff's investigator gave the opinion that defendant possessed the marijuana for sale, based on the quantity. Such an opinion is sufficient to support a conviction of possession for sale. (*People v. Newman* (1971) 5 Cal.3d 48, 53 [95 Cal.Rptr. 12, 484 P.2d 1356], disapproved on another point in *People v. Daniels* (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].)

Defendant argues the evidence of intent to sell was insufficient, despite the officer's opinion, because defendant testified without contradiction he intended only to give the marijuana away, not to sell it. We find the evidence sufficient, for at least two reasons. First, defendant testified that when he provided marijuana for use in the church, members were "free and welcomed to put some money in" towards the cost of the marijuana, and that they did so from time to time. A sale of an illegal drug is "a transfer of possession of such a drug to another for cash." (*People v. Daniels, supra,* 14 Cal.3d 857, 859.) At least with respect to the members who contributed money, defendant made such a transfer. The court reasonably could infer defendant intended to follow the same practice with respect to the marijuana he bought in California.

Second, a "sale" of drugs "includes transfers other than for money." (*People v. Lazenby* (1992) 6 Cal.App.4th 1842, 1845 [8 Cal.Rptr.2d 541].) The record shows defendant received a quantity of marijuana himself, over and above the amount he paid for with his own money, in return for providing it to the other members. Defendant testified that if he had not been apprehended, he would have received more than one-quarter of the marijuana, despite the fact he paid less than one-quarter of the total price, for getting the marijuana. Receiving a valuable commodity—here, the additional marijuana beyond the amount defendant paid for—in return for providing the commodity to another qualifies as a sale under *Lazenby.*

B. *Free Exercise of Religion*

■ Defendant contends his conviction is invalid because the prosecution failed to show the laws he violated were supported by a compelling state

interest. He characterizes his claim as one arising under the "free exercise" clause of the First Amendment to the United States Constitution.[1]

In *Employment Division* v. *Smith* (1990) 494 U.S. 872, 879 [110 S.Ct. 1595, 1600, 108 L.Ed.2d 876], the Supreme Court held that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' " (494 U.S. at p. 879 [110 S.Ct. at p. 1600 ].) The court held the free exercise clause did not prohibit Oregon from denying unemployment benefits to employees who were dismissed on account of their religiously inspired use of peyote, because the law prohibiting peyote use was a valid and neutral law of general applicability. (*Ibid.*) It further held the state was not required to demonstrate a compelling governmental interest outweighing the employees' right of free exercise. (494 U.S. at p. 885 [110 S.Ct. at pp. 1603-1604].)

In reaction to *Employment Division* v. *Smith*, Congress enacted the Religious Freedom Restoration Act (RFRA). (42 U.S.C. § 2000bb et seq.) RFRA provides that government, including a state, "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless application of the law is the "least restrictive means" of furthering a "compelling governmental interest." (42 U.S.C. § 2000bb-1(a), (b).) RFRA further provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." (42 U.S.C. § 2000bb-1(c).)

RFRA "does not present itself as an interpretation of the Constitution overruling [*Employment Division* v.] *Smith*; rather it consists of a command that must be followed as a matter of federal law." (*U.S.* v. *Bauer* (9th Cir. 1996) 84 F.3d 1549, 1558.) Consequently, the holding of *Employment Division* v. *Smith, supra,* 494 U.S. 872, that a neutral law of general application need not be supported by a compelling state interest, continues to govern First Amendment jurisprudence. (*U.S.* v. *Meyers* (10th Cir. 1996) 95 F.3d 1475, 1481; see *Smith* v. *Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143 [51 Cal.Rptr.2d 700, 913 P.2d 909] (plur. opn. of Werdegar, J.).) Since defendant's argument here is based on his contention there is no compelling state interest, if he has a claim at all it arises under RFRA, not the First Amendment.

The California Supreme Court considered RFRA at length in *Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th 1143. The court concluded

---

[1]Defendant does not assert a claim under the parallel provision of article I, section 4 of the California Constitution.

RFRA did not permit a property owner to refuse to rent to unmarried couples, in violation of antidiscrimination laws, despite her claim that to comply with the laws would violate her religious beliefs. The plurality opinion concluded the state was not required to demonstrate a compelling state interest, because the laws did not substantially burden the owner's free exercise of religion.[2] Looking to cases predating *Employment Division* v. *Smith, supra,* 494 U.S. 872, the plurality opinion cited the following factors in support of its conclusion: First, the owner's religious beliefs did not require that she rent the property at all; thus, she could avoid any burden posed by the antidiscrimination laws by selling the property and investing in something else. Second, the burden of selling the property and reinvesting amounted, at most, to an economic cost which "does not equate to a substantial burden for purposes of the free exercise clause." (12 Cal.4th at p. 1172.) Finally, exempting the owner from the antidiscrimination laws "would necessarily impair the rights and interests of third parties," i.e., unmarried cohabitants. (12 Cal.4th at p. 1176.)

Although *Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th 1143 is a plurality opinion, we find its discussion of the "substantial burden" requirement under RFRA to be highly persuasive, and we elect to follow it here. Applying that analysis, we conclude the laws under which defendant was convicted do not substantially burden his free exercise of religion. First, to constitute a substantial burden under RFRA, the challenged law must constitute "*an interference with a tenet or belief that is central to religious doctrine.*" (*Goehring* v. *Brophy* (9th Cir. 1996) 94 F.3d 1294, 1299.) Although the use of marijuana as a sacrament is central to the IZCC, defendant was prosecuted not for using marijuana but for transporting a large quantity of it and possessing it for sale. These activities are only related peripherally, if at all, to the practice of defendant's religion.

This point was made clear in *U.S.* v. *Bauer, supra,* 84 F.3d 1549. The defendants were convicted of conspiracy to manufacture and distribute marijuana, distribution of marijuana, and simple possession of marijuana. Three of the defendants, who were Rastafarians, claimed a defense under RFRA based on their religious use of marijuana. The court held the RFRA

---

[2]The plurality opinion authored by Justice Werdegar was joined by Justices George and Arabian. Justice Mosk reached the same result but considered it unnecessary to decide whether the owner had a meritorious defense under RFRA, because he concluded RFRA was unconstitutional. (*Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th at p. 1180 (dis. opn. of Mosk, J.).) Justice Kennard and Justice Baxter, the latter joined by Chief Justice Lucas, concurred and dissented, concluding that the antidiscrimination laws did substantially burden the owner's exercise of religion, requiring the state to demonstrate a compelling governmental interest. (*Id.,* at pp. 1197-1198 (conc. and dis. opn. of Kennard, J.), 1239-1240 (conc. and dis. opn. of Baxter, J.).)

defense was relevant to the counts of simple possession, but *not* to the counts based on distribution, stating, "Nothing before us suggests that Rastafarianism would require this conduct." (*Id.*, at p. 1559.)

Here, defendant obtained marijuana not only for personal use but also for distribution to at least two other church members, i.e., those who contributed the rest of the money. He also made a practice of providing marijuana to nonmembers of the church. There was no indication that defendant's own practice of his religion required him to obtain marijuana for distribution to others, especially those who were not even church members.

For this reason, *People* v. *Woody* (1964) 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813], on which defendant relies, is distinguishable. There, the Supreme Court held the prosecution of Native Americans for possessing peyote for use in religious ceremonies violated the First Amendment. Because the defendants could not use the peyote without possessing it, prohibiting them from possessing it resulted in "a virtual inhibition of the practice of defendants' religion." (*Id.*, at p. 722.) Here, because defendant was not prosecuted for simple possession, there was no such inhibition.[3]

Second, defendant traveled to California and violated its laws because he could obtain a large quantity of marijuana less expensively by doing so. Thus, the "burden" created by the laws prohibiting defendant's conduct was that defendant might have to pay more to purchase smaller amounts. As the plurality opinion in *Smith* v. *Fair Employment & Housing Com.*, *supra*, stated, "[a]n economic cost, however, does not equate to a substantial burden for purposes of the free exercise clause." (12 Cal.4th at p. 1172.) The plurality cited, among other authorities, *Braunfeld* v. *Brown* (1961) 366 U.S. 599 [81 S.Ct. 1144, 6 L.Ed.2d 563], in which Orthodox Jewish shopkeepers argued that a law requiring shops to close on Sunday violated their free exercise rights. Since their religion required them to close on Saturday as well, the shopkeepers argued they were disadvantaged because they could stay open only five days a week while other shopkeepers stayed open six.

---

[3]After *Woody* was decided, the Native American Church obtained from the federal government an exemption allowing the religious use of peyote. (See 21 C.F.R. § 1307.31 (1996).) The Ethiopian Zion Coptic Church sought such an exemption for marijuana but was unsuccessful. (See *Olsen* v. *Drug Enforcement Admin.* (D.C. Cir. 1989) 878 F.2d 1458 [279 App.D.C. 1].) Defendant asserts that denying IZCC members an arrangement similar to that granted to the Native American Church constitutes discrimination. That argument was rejected in *Olsen,* on the ground that the abuse and availability of marijuana is much more pervasive than that of peyote. (*Id.*, at pp. 1463-1464.) The court also noted the highly circumscribed, ceremonial use of peyote in the Native American Church versus the nearly continuous use of marijuana in the Ethiopian Zion Coptic Church, and the " '*sui generis* legal status of American Indians' " arising from the federal government's " 'unique obligation' " to preserve Native American culture. (*Id.*, at p. 1464.)

Rejecting the challenge, the Supreme Court stated that the law "simply regulates a secular activity and, as applied to appellants, operates so as to make the practice of their religious beliefs more expensive." (366 U.S. at p. 605 [81 S.Ct. at p. 1147].) The same is true here.

Finally, exempting defendant from the laws he violated would impair the interests of third parties—here, the citizens of California. Permitting defendant to purchase large quantities of marijuana in California would interfere substantially with the state's efforts to control trafficking in illegal drugs by, among other things, encouraging others to cultivate or import marijuana for sale to defendant and his fellow church members.

For these reasons, we conclude the laws under which defendant was prosecuted did not substantially burden his exercise of religion, and were not required to be supported by a compelling state interest.[4] As the plurality opinion in *Smith* v. *Fair Employment & Housing Com.* emphasized, requiring a compelling state interest where there is no *substantial* burden on the exercise of religion "would turn on its head the ordinary assumption that legislation on economic and social matters need only have a rational basis." Except where the state could show a compelling interest, "[e]ach person would unilaterally decide . . . which laws to obey and which to ignore," based on his or her own professed religious beliefs. (12 Cal.4th at p. 1168.) With due respect for defendant's religious beliefs, we decline to create that situation here.

### C. *Probation Terms*

As terms of probation, the court required that defendant violate no law or ordinance, not possess or use any controlled substance unless medically prescribed, and not associate with known possessors, users or traffickers of controlled substances who were unrelated to him. The court also required defendant to submit to drug testing. ██ ██ Defendant contends the requirements that he not use or possess a controlled substance, and that he submit to drug testing, impermissibly burden his free exercise of his religion.

---

[4]We note that even where the challenged law directly interferes with the use of marijuana for religious purposes—as, for example, by prohibiting simple possession or use—courts repeatedly have found a compelling governmental interest to support the law. (See, e.g., *Whyte* v. *United States* (D.C. App. 1984) 471 A.2d 1018, 1021 [Rastafarians]; *United States* v. *Middleton* (11th Cir. 1982) 690 F.2d 820, 824 [Ethiopian Zion Coptic Church]; *State* v. *Olsen* (Iowa 1982) 315 N.W.2d 1, 9 [Ethiopian Zion Coptic Church]; *Town* v. *State* ex rel. *Reno* (Fla. 1979) 377 So.2d 648, 651 [Ethiopian Zion Coptic Church].) We would have little hesitation concluding the state interest in preventing possession for sale and transportation is at least as compelling as the interest in preventing simple possession or use.

He contends the requirement that he not associate with drug users impermissibly burdens his freedom of association.[5]

### 1. *Possession or use*

■ A sentencing court has "broad discretion" to determine what conditions should be imposed in granting probation. (*People* v. *Welch, supra,* 5 Cal.4th 228, 233.) Even conditions which regulate conduct not in itself criminal are valid as long as they are " 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].)

■ The requirements that defendant not use or possess a controlled substance, and that he submit to drug testing, are reasonably related to his offenses and to future criminality. Defendant's offenses were motivated, in part, by his desire to obtain and use marijuana. Permitting defendant to continue to possess and use marijuana likely would lead him to engage in future criminal behavior. Indeed, possession of marijuana, even for personal use, is itself a criminal offense. (Health & Saf. Code, § 11357.)

Defendant argues that because the use of marijuana is central to the practice of his religion, the condition that he not possess or use it infringes a constitutional right and must be supported by a compelling state interest. ■ Because probation is a privilege and not a right (*In re York* (1995) 9 Cal.4th 1133, 1150 [40 Cal.Rptr.2d 308, 892 P.2d 804]), a probationer is not entitled to the same degree of constitutional protection as other citizens. Accordingly, even a probation condition which infringes a constitutional right is permissible where it is " 'necessary to serve the dual purpose of rehabilitation and public safety.' " (*People* v. *Burden* (1988) 205 Cal.App.3d 1277, 1281 [253 Cal.Rptr. 130], fn. omitted, quoting *People* v. *Pointer* (1984) 151 Cal.App.3d 1128, 1139 [199 Cal.Rptr. 357].)

■ The record here adequately demonstrates the condition prohibiting possession or use is necessary to serve public safety. Defendant testified he typically smokes marijuana several times every day, usually in the morning,

[5]The Attorney General argues, under *People* v. *Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802], that defendant waived these contentions by failing to object to the conditions in the lower court. The Supreme Court in *Welch* did not state whether a constitutional challenge to a probation condition can be waived by failure to assert it at trial. Justice Arabian's concurring opinion, in which Justice Kennard joined, stated his understanding that the waiver rule does not apply to challenges based on "fundamental principles of policy and constitutional guaranties." (5 Cal.4th at p. 241 (conc. opn. of Arabian, J.).) Rather than try to predict how the Supreme Court would decide the issue, we elect to address defendant's constitutional claims on their merits.

at noon, and in the evening. After smoking in the morning, defendant sometimes drives his truck on the highways to his fencing jobs, pulling a 16-foot trailer. While working at a jobsite, defendant often drives somewhere else to smoke and then drives back to the job. Defendant also operates motorized equipment at jobsites when he has been smoking. Defendant estimated he had driven within one-half hour after smoking on more than one hundred occasions.

The prosecution's expert testified that marijuana impairs driving. Defendant's expert, a medical doctor and professor of pharmacology, agreed. He stated marijuana decreases motor abilities in many people, causing difficulty in depth perception and an altered sense of timing which are particularly hazardous during driving. His opinion was that individuals who ingest marijuana and become intoxicated "shouldn't drive cars." He also said that members of the IZCC consume marijuana to bring about "some effect" rather than merely using it ceremonially, as Communion wine is used in the Catholic church.

The court reasonably could conclude from this record that if defendant were not required to refrain from using marijuana while on probation, he would continue to drive and operate power equipment while under "some effect" from using it. That conclusion adequately supported the court's imposition of the condition. A more specific condition—e.g., that defendant not drive or operate equipment while under the influence of marijuana—would not be effective because, as is evident from the record, defendant does not consider himself impaired when he does so, despite the unanimous opinion of the experts at trial.

### 2. Freedom of association

■ "[R]estriction of the right of association is part of the nature of the criminal process." (*People* v. *Robinson* (1988) 199 Cal.App.3d 816, 818 [245 Cal.Rptr. 50].) Thus, "freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state." (*Malone* v. *United States* (9th Cir. 1974) 502 F.2d 554, 556.) Where a defendant is convicted of drug possession and admits drug use, a condition of probation that the defendant not associate with other admitted and suspected users is valid. (*People* v. *Celestine* (1992) 9 Cal.App.4th 1370, 1375 [12 Cal.Rptr.2d 179].) In *In re Peeler* (1968) 266 Cal.App.2d 483 [72 Cal.Rptr. 254], in fact, the court upheld a probation condition prohibiting association with reputed drug users, even though the defendant's husband was a reputed user and the condition effectively required her to live apart from him. (*Id.*, at pp. 492-493.)

■ The condition the court imposed on defendant was narrower, applying only to users unrelated to him. The condition was supported by the state's compelling interest in preventing distribution of controlled substances. Defendant testified that "hundreds of times" he had shared marijuana with people who were not church members. Approximately 50 times, he had shared marijuana with a nonmember he met the same day.

It is a criminal offense to distribute marijuana, whether or not for profit. (Health & Saf. Code, § 11360.) The elimination of traffic in illegal drugs is a compelling state interest. (*People* v. *Superior Court* (*Clements*) (1988) 200 Cal.App.3d 491, 499 [246 Cal.Rptr. 122].) The court reasonably could conclude that if not restrained from associating with users of marijuana, defendant would continue to distribute marijuana, both within and without his church.

The state also has a compelling interest in preventing distribution of illegal drugs to minors. (See *Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113, 130 [170 Cal.Rptr. 419].) Defendant testified that children in the IZCC were encouraged to smoke marijuana. Defendant's own expert, a medical professor of pharmacology who favored legalizing marijuana, stated he "would tend to oppose" providing marijuana to minors. The court reasonably could conclude that if not prohibited from associating with other users, defendant would continue to provide marijuana to minors and to encourage them to use it.

## III

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 26, 1997.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.