[No. D043246. Fourth Dist., Div. One. Mar. 17, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT PATRICK JUNGERS, Defendant and Appellant.

## COUNSEL

Cynthia M. Sorman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**IRION, J.**—Robert Patrick Jungers appeals an order imposing a probation condition that prohibits him from initiating contact with his wife, the victim of Jungers's domestic violence. Jungers contends the condition was unreasonable and violated his rights to free association and marital privacy. We affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2001, Jungers became angry at Cary Martinez, the mother of his child, yelled at her and threw a beer bottle at the wall. When Martinez tried to leave, Jungers threw a child car seat at her, hitting her in the leg. Jungers got into Martinez's car with their child to prevent Martinez from leaving. He then followed her into the house, grabbed her neck and threw her to the ground. Jungers straddled Martinez and tried to hit her but she was able to escape. She had bruises on her arm, leg and neck. When the police arrived, Martinez was crying and said she was extremely afraid of Jungers.

Jungers was arrested and taken to jail. He was served with a protective order and advised not to contact Martinez. However, Jungers called Martinez from jail and threatened to "kick her ass" when he got out. Jungers admitted he has a substance abuse problem and a propensity for violence.

Jungers pleaded no contest to inflicting corporal injury on a spouse, cohabitant or child's parent. (Pen. Code, § 273.5, subd. (a).)[1] The court suspended imposition of a sentence and placed Jungers on probation for three years, conditioned on his participating in the Turning Point program for one year. The court ordered him to have only mutual contact with Martinez and not to annoy, harass or threaten her. When the Turning Point placement was no longer appropriate, the court reinstated probation and ordered Jungers to serve the remainder of his time in local custody.

On June 24, 2003, Jungers admitted he violated the terms of his probation by not reporting a change of address to his probation officer. The court revoked Jungers's probation but reinstated it on the same terms and conditions previously set.

On September 16, 2003, Jungers admitted he violated the terms of his probation by not reporting to his probation officer, not keeping the probation officer informed of his current address and whereabouts, and contacting or attempting to contact Martinez without her consent. In accordance with the stipulation of counsel, the court imposed a three-year prison term but suspended execution of the sentence, and reinstated probation on the previous terms and conditions. The court ordered Jungers placed in Teen Challenge, a residential treatment program, for one year. The court further ordered Jungers to have no contact with Martinez and explained that although Martinez could contact Jungers, he could not initiate contact with her.

Jungers filed a motion to modify or clarify the court's probation order. He informed the court he recently married Martinez and argued "a condition of probation restricting marital association plainly implicates the constitutional rights of privacy, liberty and freedom of association." In support of the motion, Jungers submitted the declaration of Martinez who stated she wanted to have contact with her husband while he was at Teen Challenge and she did not fear for her safety. Jungers asked the court to modify or clarify its probation order to permit him to have "marital communication and association" with his wife.

At a hearing on the motion, Jungers's attorney told the court he was seeking an order that would prohibit Jungers from annoying, harassing or molesting Martinez, but that would allow him, consistent with the rules of Teen Challenge, to have contact with her. The court clarified its ruling as follows: "[Martinez] can contact [Jungers]. He cannot contact her. He cannot initiate contact. [¶] She can write to him. He may not write to her. [¶] She can call

---

[1] Statutory references are to the Penal Code.

him. He may not call her. [¶] She can visit him at Teen Challenge. He may not go to her home."[2]

## DISCUSSION

### I

### *Standard of Review*

■ Section 1203.1 gives trial courts broad discretion to impose conditions of probation to foster rehabilitation of the defendant, protect the public and the victim, and ensure that justice is done. (§ 1203.1, subd. (j); *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 319 [124 Cal.Rptr.2d 43].) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted [124 Cal.Rptr. 905, 541 P.2d 545].) As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].)

### II

### *Jungers Preserved the Issue for Appeal*

■ Preliminarily, the People assert Jungers waived the issue by failing to object to the probation condition at the time it was imposed, citing *People v. Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802]. In *Welch*, the court held a defendant's failure to object at sentencing to an unreasonable probation condition waives the claim of error on appeal unless the issue involves a pure question of law. (*Id.* at pp. 234–236.) The court reasoned: "A timely objection allows the [sentencing] court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case. . . . A rule foreclosing appellate review of claims not timely raised in this manner helps discourage the imposition of invalid probation conditions and reduce the number of costly appeals brought on that basis." (*Id.* at p. 235.)

---

[2] The term of probation was two years, terminating on September 16, 2005.

Here, although Jungers did not object when the court first imposed the condition that he not initiate contact with Martinez, he challenged that condition by bringing a motion to modify or clarify the court's order. By objecting in this manner, Jungers gave the court an opportunity to modify or delete the condition he claimed was invalid, thus satisfying the "objection and waiver rule" of *People v. Welch, supra,* 5 Cal.4th 228, 235, 238.

## III

### *The Probation Condition Was Reasonable*

The probation condition that Jungers not initiate contact with Martinez, which restricts conduct not itself criminal, is directly related to Jungers's criminal offense and reasonably related to future criminality. (*People v. Carbajal, supra,* 10 Cal.4th 1114, 1121.) The crime involved domestic violence, necessitating the protection of the victim. Jungers admittedly had a problem with anger and had used threats and intimidation in the past to control Martinez. While on probation, Jungers contacted Martinez without her consent, thus violating the court's order prohibiting him from doing so. Under these circumstances, the probation condition is reasonably related to the goals of enhancing rehabilitative and deterrence objectives and protecting the victim. (*People v. Lent, supra,* 15 Cal.3d 481, 486.) The court acted well within its discretion by prohibiting Jungers from initiating contact with Martinez. (*Brown v. Superior Court, supra,* 101 Cal.App.4th 313, 319.)

## IV

### *The Probation Condition Was Constitutionally Valid*

█ Probation is a privilege and not a right. (*In re York* (1995) 9 Cal.4th 1133, 1150 [40 Cal.Rptr.2d 308, 892 P.2d 804].) Because probation conditions foster rehabilitation and protect the public safety, they may infringe the constitutional rights of the defendant, who is "not entitled to the same degree of constitutional protection as other citizens." (*People v. Peck* (1996) 52 Cal.App.4th 351, 362 [61 Cal.Rptr.2d 1].) "Certain intrusions by government which would be invalid under traditional constitutional concepts may be reasonable at least to the extent that such intrusions are required by legitimate governmental demands." (*In re White* (1979) 97 Cal.App.3d 141, 149–150 [158 Cal.Rptr. 562].) Consequently, restrictions on a probationer's right of association are permissible if reasonably required to accomplish the needs of the state. (*People v. Robinson* (1988) 199 Cal.App.3d 816, 818 [245 Cal.Rptr. 50] ["restriction of the right of association is part of the nature of the criminal process"]; *People v. Peck, supra,* at p. 363 [probation condition that defendant convicted of drug offenses not associate with other drug users was valid].)

However, probation conditions that restrict constitutional rights must be carefully tailored and "reasonably related to the compelling state interest" in reforming and rehabilitating the defendant. (*People v. Mason* (1971) 5 Cal.3d 759, 768 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on another ground in *People v. Lent, supra*, 15 Cal.3d 481, 486, fn. 1; *People v. Delvalle* (1994) 26 Cal.App.4th 869, 879 [31 Cal.Rptr.2d 725].)

Here, Jungers's reasonable expectations of free association and marital privacy have necessarily been reduced by his conviction of a crime—specifically, a felony involving domestic violence against Martinez. Nevertheless, the probation condition restricting Jungers's ability to contact Martinez is valid only if it is reasonably necessary to accomplish the needs of the state and is narrowly tailored to accomplish this goal. We conclude it is.

A

*State's Interest in Addressing Domestic Violence*

The elimination of domestic violence is a compelling state interest. The Legislature's stated purpose in enacting the Law Enforcement Response to Domestic Violence Act (§§ 13700–13731; Stats. 1984, ch. 1609, § 3, p. 5713) was "to address domestic violence as a serious crime against society and to assure the victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." (Stats. 1984, ch. 1609, § 1, p. 5711.) The Legislature expressed its intent "that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior in the home is criminal behavior and will not be tolerated." (*Ibid.*)

Consistent with the Legislature's response to the problem of domestic violence, section 273.5 punishes a defendant who inflicts corporal injury on a spouse, cohabitant or person who is the mother or father of the defendant's child. "The statute reflects legislative recognition of the high incidence of violence in intimate relationships and the state's interest in encouraging nonviolent intimate relationships." (Cal. Judges Benchbook: Domestic Violence Cases in Criminal Court (CJER 2000) § 1.7, p. 9.) Further, when a defendant convicted of domestic violence is granted probation, the terms of probation *must* include "[a] criminal court protective order protecting the victim from further acts of violence, threats, stalking, sexual abuse, and harassment, and, if appropriate, containing residence exclusion or stay-away conditions." (Pen. Code, § 1203.097, subd. (a)(2).)

■ Here, the court was required to issue a protective order for Martinez when it placed Jungers on probation, despite Martinez's claim she did not fear for her safety.[3] Although the court's order curtailed Jungers's rights of association and marital privacy, it legitimately and reasonably operated to accomplish the needs of the state in addressing domestic violence by rehabilitating Jungers and protecting Martinez. The state's compelling interest in protecting victims of domestic violence justifies the restriction on Jungers's right to initiate contact with Martinez. (See *In re Peeler* (1968) 266 Cal.App.2d 483, 492–493 [72 Cal.Rptr. 254] [court upheld probation condition prohibiting association with reputed drug users, including defendant's husband, effectively requiring her to live apart from him]; *People v. Celestine* (1992) 9 Cal.App.4th 1370, 1375 [12 Cal.Rptr.2d 179] [probation condition prohibiting defendant from associating with other drug users, including defendant's girlfriend, was proper]; *People v. Wardlow* (1991) 227 Cal.App.3d 360, 367 [278 Cal.Rptr. 1] [court properly imposed probation condition of no contact with other child molesters, including defendant's brothers].)

B

*The Order Was Narrowly Drawn*

The court did not impose a complete ban on association or marital privacy, but only a narrowly tailored condition consistent with Jungers's rehabilitation and the safety of the victim. The condition prohibiting Jungers from *initiating* contact with Martinez does not require that he refrain from participating in visits, conversations and communications with her. It only assures that contact between them is acceptable to and welcomed by Martinez, thus supporting the state's compelling interest in preventing further incidents of violence, threats and harassment. In this regard, the condition constitutes a reasonable restriction on the *manner* in which Jungers may communicate with Martinez. As drawn, the condition does not interfere with Jungers's marital relationship to an impermissible degree.

---

[3] We note that victims of domestic violence often remain in abusive relationships. (See *People v. Jenkins* (1994) 29 Cal.App.4th 287, 294 [34 Cal.Rptr.2d 483] [victim of severe beatings and repeated abuse did not want boyfriend arrested].) In this regard, domestic violence statutes are meant to protect "victims from participation or complicity in their own predicament." (*People v. Gams* (1997) 52 Cal.App.4th 147, 153–154 [60 Cal.Rptr.2d 423] [discussing social science phenomenon of " 'learned helplessness' "].)

## DISPOSITION

The order is affirmed.

Huffman, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 15, 2005.