[No. S149303. Dec. 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO OLGUIN, Defendant and Appellant.

## Counsel

John L. Staley, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting, Barry Carlton and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEORGE, C. J.**—At issue in this case is a condition of probation requiring defendant to notify his probation officer of the presence of any pets at defendant's place of residence. Defendant contends the challenged condition is not reasonably related to future criminality, limits his fundamental rights, and is unconstitutionally overbroad. We disagree. Probation officers are charged with supervising probationers' compliance with the specific terms of their probation to ensure the safety of the public and the rehabilitation of probationers. Pets residing with probationers have the potential to distract, impede, and endanger probation officers in the exercise of their supervisory duties. By mandating that probation officers be kept informed of the presence of such pets, this notification condition facilitates the effective supervision of probationers and, as such, is reasonably related to deterring future criminality. Defendant's other arguments are without merit, because no fundamental or constitutional rights are implicated by the challenged term of probation. We therefore conclude that this notification condition is valid. The Court of Appeal's decision, which reached the same conclusion, is affirmed.

### I.

Defendant pleaded guilty to two counts of driving with a blood-alcohol level in excess of 0.08 percent by weight (Veh. Code, § 23152, subd. (b)) and admitted allegations that he had suffered prior convictions. He was sentenced to three years eight months in state prison. Pursuant to a plea agreement, execution of this sentence was suspended and defendant was placed on three years' supervised probation, including a one-year term to be served in county jail. During the sentencing hearing, defendant requested that the trial court modify three conditions of his probation. Relevant to this appeal, defendant asked that the word "pets" be stricken from the probation term requiring defendant to "[k]eep the probation officer informed of place of residence, cohabitants and pets, and give written notice to the probation officer twenty-four (24) hours prior to any changes." Defense counsel argued that this term was "unconstitutional and overbroad."

The trial court denied this request, and defendant appealed. In a split decision, the Court of Appeal majority concluded that his challenge to the condition requiring notification of the presence of pets was without merit and that the trial court did not abuse its discretion in overruling defendant's objections to this term of probation; the concurring and dissenting justice disagreed. We granted defendant's petition for review in order to resolve the conflict among the appellate decisions addressing this issue.

## II.

■ "Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. [Citations.] The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions. [Citations.] The primary goal of probation is to ensure '[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation.' (Pen. Code, § 1202.7.)" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*).) Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (Pen. Code, § 1203.1, subd. (j).) Although the trial court's discretion is broad in this regard, we have held that a condition of probation must serve a purpose specified in Penal Code section 1203.1. (*Carbajal, supra*, 10 Cal.4th at p. 1121; *People v. Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97].) If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence. (*People v. Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630] (*Mason*), disapproved on other grounds in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545] (*Lent*).) Additionally, at the sentencing hearing, a defendant can seek clarification or modification of a condition of probation. (See, e.g., *People v. Bravo* (1987) 43 Cal.3d 600, 610, fn. 7 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*) ["Oral advice at the time of sentencing . . . afford[s] defendants the opportunity to clarify any conditions they may not understand and intelligently to exercise the right to reject probation granted on conditions deemed too onerous."]; see also Pen. Code, § 1203.3, subd. (a) ["The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence."].)

■ We review conditions of probation for abuse of discretion. (*Carbajal, supra*, 10 Cal.4th at 1121; *People v. Welch* (1993) 5 Cal.4th 228, 233 [19 Cal.Rptr.2d 520, 851 P.2d 802].) Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent, supra*, 15 Cal.3d at p. 486.) This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. (*Id.* at p. 486, fn. 1; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 68–69 [90 Cal.Rptr.2d 77] (*Balestra*).) As such,

even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. (See *Carbajal, supra*, 10 Cal.4th at 1121.)

■ The condition of probation at issue in the present case requires defendant to "[k]eep the probation officer informed of place of residence, cohabitants and *pets*, and give written notice to the probation officer twenty-four (24) hours prior to any changes." (Italics added.) It is undisputed that the condition requiring notification of the presence of pets has no relationship to driving under the influence of alcohol, the crime of which defendant was convicted, and ownership of most pets is not itself criminal. Defendant argues that pet ownership additionally is not reasonably related to future criminality, and thus the notification condition is invalid under the test set forth in *Lent*. (*Lent, supra*, 15 Cal.3d 481.) The Court of Appeal majority disagreed, holding that this condition is reasonably related to deterring future criminality, because it provides information that is useful for effective probation supervision. For example, a pet can threaten a probation officer's safety during a probation visit, distract an officer attempting to conduct a probation search, or prevent the officer from entering a probationer's residence in the first instance. The appellate court majority also upheld this condition as facilitative of the search condition, a term of probation that defendant does not challenge. We agree with the Court of Appeal majority that the notification condition in question is reasonably related to the supervision of defendant and hence to his rehabilitation and potential future criminality.

■ Penal Code section 1203, subdivision (a), defines probation as "the suspension of the imposition or execution of a sentence and the order of *conditional* and revocable release in the community *under the supervision of a probation officer*." (Italics added.) Generally speaking, conditions of probation "are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 875 [97 L.Ed.2d 709, 107 S.Ct. 3164] [also citing research suggesting that "more intensive supervision can reduce recidivism," and noting that "the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes"].) For example, probation conditions authorizing searches "aid in deterring further offenses . . . and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers." (*People v. Robles* (2000) 23 Cal.4th 789, 795 [97 Cal.Rptr.2d 914, 3 P.3d 311].) A condition of probation that enables a probation officer to supervise

his or her charges effectively is, therefore, "reasonably related to future criminality." (See, e.g., *People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240 [93 Cal.Rptr.2d 522] (*Kwizera*) [affirming probation condition requiring the defendant to " 'follow such course of conduct as the probation officer prescribes' " as reasonable and necessary to enable the probation department to supervise compliance with specific conditions of probation]; *Balestra, supra,* 76 Cal.App.4th at pp. 65–67 [upholding warrantless search condition that served valid rehabilitative purpose of helping probation officer ensure that probationer obeys all laws].)

The condition requiring notification of the presence of pets is reasonably related to future criminality because it serves to inform and protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation. As noted above, to ensure that a probationer complies with the terms of his or her probation and does not reoffend, a probation officer must be able to properly supervise that probationer. Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality. Therefore, the protection of the probation officer while performing supervisory duties is reasonably related to the rehabilitation of a probationer for the purpose of deterring future criminality.

There are several ways in which notification concerning pets contributes to the safety of probation officers. Animals can be unpredictable and potentially dangerous when faced with a stranger in their territory, and some pose a great or even life-threatening hazard to persons in these circumstances.[1] Being informed at all times of the pets that are present at a probationer's residence thus reduces the possible threat to the probation officer's safety by enabling the officer to be aware of, and prepared for, situations that may arise should the officer choose to conduct an unscheduled "compliance visit" to the probationer at his or her residence.

---

[1] For example, both statutory law and case law routinely address the notable problems presented by dogs, dog bites, and poor dog owner/handler control. (See, e.g., Pen. Code, §§ 399 [mischievous animal causing death or serious bodily injury], 597.5 [felonious possession of fighting dogs]; Civ. Code, § 3342 [dog bites; strict liability of owner]; *People v. Henderson* (1999) 76 Cal.App.4th 453 [90 Cal.Rptr.2d 450] [upholding conviction for drawing or exhibiting a deadly weapon, a pit bull, with the intent to resist or prevent an arrest]; see also *People v. Knoller* (2007) 41 Cal.4th 139 [59 Cal.Rptr.3d 157, 158 P.3d 731] [involving second degree murder conviction arising from inadequate supervision of dogs known to be aggressive and highly dangerous].)

Ensuring advance knowledge of the presence of pets at a probationer's place of residence also is a reasonable means of facilitating unannounced searches of the probationer's residence during these compliance visits. The specific terms of defendant's probation require him to "[s]ubmit to a search . . . of your . . . residence . . . at any time of the day or night. . . ." " 'The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.' [Citation.]" (*Mason, supra*, 5 Cal.3d at pp. 763–764; see also *People v. Reyes* (1998) 19 Cal.4th 743, 753 [80 Cal.Rptr.2d 734, 968 P.2d 445] ["the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches"]; *Bravo, supra*, 43 Cal.3d at p. 610 [noting that probation search conditions serve to deter the commission of further offenses and to assist in ascertaining whether probationers are complying with the terms of their probation].) A pet, such as even a harmless small dog barking in the front yard, may act as a warning system, alerting the probationer to a probation officer's approach prior to the officer's knock at the door and allowing the probationer to destroy or hide evidence of illegal activity; it also may distract the probation officer or prevent or delay the officer from entering a residence or conducting a search. Knowing in advance which pets are present also can help avoid surprise to the officer and avert unnecessary injury or death of animals possessed by a probationer.

Reporting the presence of pets to a probation officer is a simple task, imposes no undue hardship or burden, and is a requirement that clearly falls within the bounds of reason. Although some pets may be so innocuous that they could not possibly interfere with a probation officer's performance of his or her duties, it would be unreasonable and impractical to leave it to a probationer to decide which pets could interfere with an officer's supervisory duties, or to require a trial court to define the type, nature, and temperament of every animal that a probationer must report. On the other hand, it is reasonable to place the burden on a probationer to inform the probation officer which animals are present at his or her residence; the probation officer then can decide which precautions, if any, to take.

■ Defendant claims that this notification condition restricts his ability to own a pet. A probation condition should be given "the meaning that would appear to a reasonable, objective reader." (*Bravo, supra*, 43 Cal.3d at p. 606.)

On its face, the condition requires defendant only to *inform* his probation officer of the presence of any pets at his place of residence and to give timely notice "prior to any changes" in that situation. It does not forbid defendant from owning pets, nor does it require defendant to obtain permission from his probation officer in order to obtain or keep any pet.

Because the condition literally encompasses the gamut of pets from puppies to guppies, we observe, as did the Court of Appeal majority, that this term of probation does not "authorize a probation officer to irrationally or capriciously exclude a pet." (See, e.g., *Kwizera, supra*, 78 Cal.App.4th at pp. 1240–1241 [probation department's authority to ensure compliance with terms of probation does not authorize irrational directives by probation officer].)[2] In the present case, it is not alleged that any probation officer has taken any action restricting defendant's ability to own or keep a pet at his residence. It therefore is speculative on this record to define the scope of a probation officer's supervisory authority under the notification condition in responding to a notice concerning a pet. Defendant challenges the condition on its face, but on its face the condition simply requires notification that reasonably provides the probation officer with information designed to assist in the supervision of defendant while he is on probation. What action the officer may choose to take once he or she receives information concerning a pet—whether to be accompanied by animal control officers during any search, to request that defendant detain or relocate a pet during a search, or to petition the trial court for modification of the terms of defendant's probation—is beyond the scope of a facial attack on the notification condition itself.

Defendant suggests that a "less burdensome" and more "carefully tailored" condition would be to require the probation officer to contact defendant prior to making a compliance visit in order to determine whether defendant possesses any pets or, if making an unannounced probation-compliance check, to require the officer to request that all animals on the property be restrained prior to the officer's entry into the residence. These alternatives would interfere with the effectiveness of unannounced compliance visits and searches. The probation officer must be able to visit defendant and search his residence without any advance notice or restriction, so as to be able to ascertain whether he is complying with the other terms of his probation. More importantly, the relevant test is *reasonableness* (*Lent, supra*, 15 Cal.3d at p. 486), and defendant does not persuasively explain why it is *unreasonable*

---

[2] At one point in its opinion, the Court of Appeal majority referred to an implied power on the part of the probation officer "to exclude certain pets or direct the care of the pet (i.e., keeping [it] contained in order to allow searches)." In response, the People assert that if a probation officer wished to prohibit defendant from having a particular pet at his residence, the officer would be required to petition the trial court pursuant to Penal Code section 1203.2 to modify the conditions of probation.

to place the burden on defendant to keep the probation officer informed of the presence of any pets at the residence.

■ Finally, defendant argues this notification provision deprives him and other probationers of due process of law. As we have acknowledged, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 [55 Cal.Rptr.3d 716, 153 P.3d 282]; see also *People v. Smith* (2007) 152 Cal.App.4th 1245, 1250 [62 Cal.Rptr.3d 316]; *People v. Jungers* (2005) 127 Cal.App.4th 698, 704 [25 Cal.Rptr.3d 873]; *In re Byron B.* (2004) 119 Cal.App.4th 1013, 1016 [14 Cal.Rptr.3d 805].)

On the other hand, we have observed that probation is a privilege and not a right, and that adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights—as, for example, when they agree to warrantless search conditions. (*People v. Ramos* (2004) 34 Cal.4th 494, 506 [21 Cal.Rptr.3d 575, 101 P.3d 478]; *Bravo, supra,* 43 Cal.3d at p. 609; see also *People v. Medina* (2007) 158 Cal.App.4th 1571, 1580 [70 Cal.Rptr.3d 413] ["a suspicionless search pursuant to a probation search condition is not prohibited by the Fourth Amendment"]; *Balestra, supra,* 76 Cal.App.4th at pp. 68–69 [upholding a probation condition requiring submission to alcohol and drug testing at the discretion of the probation officer]; *People v. Lopez* (1998) 66 Cal.App.4th 615, 628–629 [78 Cal.Rptr.2d 66] (*Lopez*) [upholding a probation condition prohibiting association with known gang members].)

Defendant, relying primarily upon decisions that govern probation conditions limiting rights of association and speech protected by the First Amendment (see, e.g., *Lopez, supra,* 66 Cal.App.4th at p. 615), contends that the condition requiring notification of the presence of pets is overbroad. He invites us to determine whether the condition is closely tailored to achieve its legitimate purpose of rehabilitating defendant and protecting the probation officer. We do not apply such close scrutiny in the absence of a showing that the probation condition infringes upon a constitutional right. As noted, absent such a showing, this court simply reviews such a condition for abuse of discretion, that is, for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances. (*Carbajal, supra,* 10 Cal.4th at p. 1121.)

Attempting to identify a relevant constitutional right, defendant contends that the condition requiring notification of the presence of pets unconstitutionally deprives him of a property right without due process of law under the Fourteenth Amendment. This claim is without merit. Putting aside the

doubtful proposition that pets constitute a type of property that is not subject to reasonable regulation,[3] we note that defendant has not been prohibited from owning any pet, nor has any pet been taken from him. A condition that requires defendant merely to *notify* his probation officer of pet ownership does not *deprive* defendant of any property right.

Defendant also asserts a constitutionally protected interest in sharing his home with any animal of his choice. Again, putting aside the doubtful proposition that such associational rights exist (see, e.g., *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 388 [33 Cal.Rptr.2d 63, 878 P.2d 1275] ["There is no federal or state constitutional provision . . . that confers [on persons involved in common interest developments] a general right to keep household pets . . . ."]), we observe that defendant has raised a facial challenge to a probation condition that merely requires notification of the presence of pets, and that does not provide for the probation department's approval or removal of any pet in his home. Defendant proffers no reason for us to conclude that a notification requirement implicates any associational rights, even assuming such rights exist.[4]

---

[3] Other jurisdictions in different contexts have found that ownership of animals, specifically dogs, "does not implicate fundamental constitutional rights such as speech or association" (*Colorado Dog Fanciers v. Denver* (Colo. 1991) 820 P.2d 644, 651), and that regulations affecting or restricting dog ownership are permissible despite claims that such regulation unduly impacts property interests. (See *American Dog Owners Ass'n v. Dade County, Fla.* (S.D.Fla. 1989) 728 F.Supp. 1533, 1541 [ordinance regulating the ownership of pit bull dogs did not implicate any fundamental rights], relying in part on *Nicchia v. New York* (1920) 254 U.S. 228, 230 [65 L.Ed. 235, 41 S.Ct. 103] ["Property in dogs is of an imperfect or qualified nature and they may be subject to peculiar and drastic police regulations by the State without depriving their owners of any federal right."].) We find nothing to the contrary in the federal authority cited by defendant, which simply recognizes that a peace officer's action in killing a suspect's pet constitutes a "seizure" of property or personal effects that must be justified under the Fourth Amendment. (See, e.g., *San Jose Charter of Hells Angels v. San Jose* (9th Cir. 2005) 402 F.3d 962, 977–978 ["[T]he Fourth Amendment forbids the killing of a person's dog . . . when that destruction is unnecessary—*i.e.*, when less intrusive, or less destructive, alternatives exist."]; *Fuller v. Vines* (9th Cir. 1994) 36 F.3d 65, 68 [killing a dog "is a destruction recognized as a seizure under the Fourth Amendment"], overruled on other grounds in *Robinson v. Solano County* (9th Cir. 2002) 278 F.3d 1007, 1013.)

[4] We note that as a further condition of probation that is *not* challenged, defendant agreed not to associate with criminals and drug users and to keep his probation officer informed of any cohabitants. Analogous restrictive probation conditions have been upheld even though they clearly affect a probationer's associational rights. (See, e.g., *People v. Lopez* (1998) 66 Cal.App.4th 615, 628–629 [78 Cal.Rptr.2d 66] [condition prohibiting association with known gang members]; *People v. Peck* (1996) 52 Cal.App.4th 351, 363 [61 Cal.Rptr.2d 1] [condition prohibiting association with known possessors, users, or traffickers of controlled substances who were unrelated to probationer]; *People v. Garcia* (1993) 19 Cal.App.4th 97, 101–103 [23 Cal.Rptr.2d 340] [condition prohibiting association with known users or sellers of narcotics, felons, or ex-felons]; *People v. Wardlow* (1991) 227 Cal.App.3d 360, 366–367 [278 Cal.Rptr. 1] [condition prohibiting association with child molesters].)

Defendant cites due process concepts that assertedly support an additional constitutional interest—that of not being subject to punishment for violation of a provision that is too vague to afford notice of what is prohibited or required. (See *In re Sheena K, supra,* 40 Cal.4th at p. 890.) The notification provision in question is clear, however. It requires defendant to inform his probation officer of the presence of the pets in his household. Defendant counters that the terms of the condition are so broad that he is subject to incurring a probation violation for failing to notify the probation officer that he keeps a goldfish, despite his view that the purpose of the condition would not served by such an interpretation and that the condition should not be interpreted to include such a requirement.[5] This argument, however, goes to the reasonableness of the requirement, and not to the question of whether the term affords adequate notice of what is prohibited or required. The reasonableness of the requirement is evaluated for abuse of discretion. We have explained that it is reasonable to permit the probation officer, rather than defendant or the trial court, to make the initial determination whether, in the officer's view, possession of a particular pet will have an impact on, or interfere with, probation supervision.

The concurring and dissenting justice in the appellate court, without referring specifically to constitutional principles, expressed the view that "the provision is overbroad." Although acknowledging that "probation requires careful supervision by a probation officer" and that "a probation search may occur at defendant's premises," this justice asserted that "the term and condition of probation relative to the ownership of pets and the notification of the existence of such pets should be limited to dogs and/or pets which pose a risk of injury to individuals entering the premises. In that the condition is not so limited, it is overbroad." The dissenting opinion makes a similar argument in this court. Setting aside the difficulty of administering a standard that would depend upon the subjective judgment of the probationer or the probation officer concerning which pets "pose a risk of injury," we note the fallacy of this argument insofar as it relies upon principles applicable to probation conditions that impair constitutional rights, while failing to identify any constitutional right impaired or infringed by the notification condition

[5] As noted, no question involving actual enforcement of the notification condition is presently before the court, only the reasonableness of the condition on its face. As for the hypothetical situation of the unreported goldfish posited by defendant, we note generally that a defendant's violation of a condition imposed as a requirement of probation does not necessarily signify that probation must be, or even will be, revoked. The trial court ultimately maintains discretion whether "the interests of justice" require that probation be revoked in any particular case. (Pen. Code, § 1203.2, subd. (a).) Moreover, a defendant facing revocation of his or her probation for violating a term of probation has the right before revocation to a hearing, at which he or she has the right to counsel and to argue that a particular application of a probation condition exceeds the bounds of reason under the circumstances. (See generally *ibid.*; Pen. Code, § 1203.3.)

here in question. In our view, in the absence of any demonstrated impairment of a constitutional right, this notification condition is not subject to exacting scrutiny for overbreadth; rather, it is to be accorded deferential review for any abuse of discretion. As we have explained above, no abuse of discretion occurred in the case before us.

## III.

For the reasons discussed above, we conclude that the trial court did not abuse its discretion in imposing the condition that defendant, as a term of his probation, notify his probation officer of the presence of any pets at defendant's place of residence. The judgment of the Court of Appeal is affirmed.

Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

**KENNARD, J.,** Dissenting.—Defendant pled guilty to two counts of driving with a blood-alcohol level in excess of 0.08 percent by weight. (Veh. Code, § 23152, subd. (b).) The trial court placed him on three years of supervised probation. Among the conditions of probation was that defendant, who had no history of animal abuse or keeping dangerous animals, notify the probation officer before obtaining any pets, and that he give 24 hours' written notice "prior to any changes." A divided Court of Appeal upheld this condition, as does a majority of this court. But in my view, the condition, which has no connection to defendant's "drunk driving" conviction, is overbroad and invalid. Hence, my dissent.

In granting probation, a trial court may in its discretion impose *reasonable* conditions. (Pen. Code, § 1203.1, subd. (j).) A probation condition is valid if it (1) has a connection to the crime committed, (2) relates to conduct that is criminal, or (3) reasonably relates to future criminality. (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].)

Here, there is no relationship between the pet probation condition and defendant's "drunk driving" conviction. Nor is it criminal conduct to have a pet. With respect to the third factor—whether the condition has a reasonable relationship to future criminality—the majority's answer is a resounding "yes." I disagree.

As the majority sees it, any probation condition that makes it easier for a probation officer to supervise a probationer is one that reasonably relates to deterring future criminality and thus is valid. (See maj. opn., *ante*, at p. 378

["condition facilitates the effective supervision of probationers and, as such, is reasonably related to deterring future criminality"]; *id.*, at p. 380 ["provides information that is useful for effective probation supervision"]; *id.*, at pp. 380–381 ["A condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.' "].) Pets, the majority insists, can be potentially dangerous as they could pose a safety threat to probation officers and could interfere with unscheduled visits and unannounced searches by acting as a warning system. (Maj. opn., *ante*, at pp. 380, 381, 382.)

The flaw in the majority's reasoning is that it treats all pets alike. The majority's concern is that some pets may "pose a great or even life-threatening hazard to persons . . . ." (Maj. opn., *ante*, at p. 381.) Most pets do not fall into that category. Yet the majority, in upholding the probation condition, treats *any* pet as potentially "life threatening." Falling within that reach would be Jaws the goldfish, Tweety the canary, and Hank the hamster, hardly the kinds of pets one would expect to strike fear in a probation officer. The majority's safety concern could easily be met by a more limited probation condition related to the keeping of dangerous animals.

The majority expresses concern that pets may warn the probationer of the probation officer's presence, thereby interfering with unannounced visits and searches. I find that concern puzzling for two reasons. First, the probation condition does not solve the problem the majority poses because the probationer need only give *notice* that he or she has a pet; nothing in the condition prohibits probationers from having a pet. (Maj. opn., *ante*, at pp. 382–383.) Second, warning the probationer is irrelevant, because a probation officer cannot just barge into a probationer's residence. The law requires knocking or other means of notice of the officer's presence, and an announcement of the purpose of the visit. (*People v. Mays* (1998) 67 Cal.App.4th 969, 973, fn. 4 [79 Cal.Rptr.2d 519]; see Pen. Code, §§ 844, 1531; *People v. Murphy* (2005) 37 Cal.4th 490, 495–496 [36 Cal.Rptr.3d 125, 123 P.3d 155].) This requirement itself warns the probationer of the officer's presence.

Because it treats all pets alike, the San Bernardino County probation condition requiring petitioners to notify their probation officers of all pets at their residences, and of any change in the status of those pets, is overbroad and thus invalid. Most pets—including domestic cats, tropical fish, and song birds like canaries—present no conceivable risk of impairing or interfering with probation supervision. Indeed, the overbroad pet notification condition may itself interfere with achievement of probation's rehabilitative goals

because the notification burdens it imposes may discourage pet ownership, thereby depriving probationers of the well-documented physical and mental health benefits of animal companionship at home. To eliminate these unnecessary and counterproductive burdens, I would require probation authorities to draft a narrower and more rational probation condition.

Moreno, J., concurred.