Filed 11/8/21  In re J.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E076478 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000340) |
| v. | OPINION |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samah Shouka, Judge.

Affirmed as modified.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Ksenia

Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Minor J.G. (minor) appeals from a juvenile court's disposition order. He contends the probation department failed to convene a child and family team (CFT) meeting prior to the disposition hearing. He further argues that he was in compliance with the terms of his home supervision, there was no evidence his mother could not provide adequate supervision and care at home, and maintaining him on home supervision was in his best interest; thus, the court erred in placing him at the Youth Treatment and Education Center (YTEC). We conclude that this issue has become moot. He additionally claims that his probation term prohibiting tobacco use is invalid and should be stricken. The People concede, and we agree, that the probation condition should be stricken. Otherwise, we affirm.

## PROCEDURAL BACKGROUND

On May 17, 2020, minor, who was 17 years old, took his mother's truck without permission and drove his younger brother and several friends to the river to go swimming. He did not have a driver's license. He drank beer and smoked marijuana. When they left the river, minor backed up and hit a car. He became scared and accelerated onto the highway to get away and then collided with another car. Minor kept driving at a high rate of speed, approximately 80 to 90 miles an hour, and lost control of the truck when he approached a curve. His truck hit the side of a mountain and rolled twice. One of his passengers was ejected from the side window, suffered a spinal injury, and is now paralyzed. The passenger in the front seat died as a result of the collision.

2

Minor was arrested and consented to a blood test. He had a blood-alcohol content of 0.093 percent.

On May 19, 2020, the San Bernardino County District Attorney filed a Welfare and Institutions Code[1] section 602 petition alleging that minor committed gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)(1), count 1), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a), counts 2-4), and hit and run driving (Veh. Code, § 20002, subd. (a), count 5). Minor admitted counts 1 and 4, and the court dismissed the remaining counts. He was released on house arrest.

On June 29, 2020, the matter was transferred to Riverside County, which was minor's place of residence. Minor's counsel requested the matter to be referred to the probation department for a disposition memorandum discussing options for services for him to participate in, and the People agreed. The court set a hearing for July 28, 2020, and released minor on home supervision on specified terms pending the hearing.

The court held a disposition hearing on July 28, 2020, and continued the matter for three weeks for the probation department to complete the disposition report.

The probation department filed a disposition report on August 6, 2020. The probation officer interviewed minor, and minor admitted that he took the keys to his mother's truck after she left home, he did not have a license, and he knew he was not allowed to drive without one. He said he just wanted to hang out with his friends and drink beer. He admitted to driving without a license on multiple occasions but stated he

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

3

does not drive without his mother in the car.  Minor said he was not trying to flee the scene of the collision(s) but was scared of what would happen to him.  He admitted his friends were telling him to stop.  When asked what he would say to the victims, he said he would apologize and ask if they would speak to the court to give him another chance.  The probation officer noted that minor did not appear to show remorse for his actions and instead seemed more concerned about what would happen to him.  At the scene of the accident, he was heard saying "I don't have a driver's license" and begged everyone not to call the police.  The probation officer was extremely concerned about minor's blatant disregard for the safety of his passengers and the others involved in the accidents.  The probation officer further reported that minor said he began drinking alcohol at the age of 15 and drank beer about once or twice a week.

The probation officer also interviewed minor's mother (mother).  She said she left home on the day of the incident, and when she returned in the afternoon, she noticed the truck and keys missing.  She did not call the police but attempted to text her sons.  Mother had only had the truck for three days and believed her son was test driving it.  She also said he was influenced by his friends to take it and drive to the river.  Mother said she wanted the case to be dismissed and promised that minor "would never do this again."  The probation department made multiple attempts to conduct a follow-up telephone interview, but mother did not make herself available.  The probation report further stated that mother claimed minor was always home being supervised; however, he was clearly not supervised on the day of the incident.  Moreover, according to minor,

4

mother allowed him to drive on multiple occasions with her in the car, knowing he did not have a license.

The probation officer further reported that on July 9, 2020, minor's case was screened before the Interagency Placement Screening Committee. His treatment needs were identified as individual and family counseling, drug treatment, victim awareness, and school credit recovery. The committee believed placement in a secured facility such as YTEC was warranted, for the safety of minor and the community. The committee also recommended that based on his poor moral choices and the trauma he would likely suffer due to the consequences of his actions, minor should be ordered to complete moral reconation therapy[2] and a trauma-centered treatment program at YTEC.

In sum, the probation department believed minor was in need of a high level of supervision to assist him in his rehabilitation and treatment needs. He posed a serious danger to himself and others. Thus, for his safety and the safety of others, the probation department recommended minor be declared a ward and committed to YTEC under specified conditions. YTEC would provide him with education and counseling, as well as structured supervision and accountability.

---

[2] In another part of the record, it is referred to as moral recognition therapy. "MRT [Moral Reconation Therapy] is a cognitive-behavioral treatment system that leads to enhanced moral reasoning, better decision making, and more appropriate behavior." <https://www.moral-reconation-therapy.com>

At a hearing on August 11, 2020, minor's counsel objected to the probation officer's report since minor was interviewed without her present. She thus asked for the court to strike the disposition report and order a new one, with different officers writing the report. The court ordered that probation write a new disposition report without asking minor about the underlying offenses. The court ordered that minor continue on home supervision while awaiting the disposition order.

The probation department submitted another report on September 8, 2020. The probation officer reported that according to school records, minor had a 1.08 cumulative grade point average in high school. He was interviewed on August 20, 2020, with his counsel present, and waived his *Miranda*[3] rights. Minor stated this incident was not "all his fault" and that he did not plan for this to happen.

Mother was also interviewed on August 20, 2020, and she said she was sad for the mother who lost her son and for the minor who was paralyzed; she wanted to ask for forgiveness and hoped the parents would forgive her son, as "this was an error on all the boys since they all pitched in for alcohol." Mother said minor was a "good boy" who was obedient and followed the rules of the home. Initially, she denied that minor had previously been pulled over for driving without a license and said he had never received a ticket. However, when confronted with information otherwise, she changed her mind and said he had been pulled over, but she was unsure of how many times. She admitted that, in March 2020, a police officer called her regarding minor driving without a license. The

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

6

probation officer asked if she allowed minor to drive her cars, she said "yes," but said that was her error. When asked about minor's substance abuse, she said he only drank with his friends, and she was unaware of his use of marijuana. She then retracted her statement and said minor did not drink. The probation officer asked what consequences minor received for the current incident, and she said he was expected to continue doing his chores. The probation officer further noted that mother said she was aware minor did not have a driver's license, and said she "never" let him drive in the past.

The probation report also repeated the analysis and recommendation from the Interagency Screening Committee that minor should be placed at YTEC.

The matter was continued several times, and minor was maintained on home supervision.

The probation department filed a home supervision report on October 22, 2020, and reported that mother admitted she transports herself and minor, even though she does not have a driver's license. The probation officer told her that minor should only be driven by someone with a valid driver's license.

On October 21, 2020, counsel for minor filed an informational memorandum, contending that minor had demonstrated during his time on home supervision that he was not a danger to himself or society, and that committing him to a locked facility like YTEC was not in his best interests since there were programs available in the community. The memorandum outlined alternative options, including services offered by the California mentor program, the teen education mentoring program option (TEMPO), Riverside University Health System Behavioral Health, Alcoholics Anonymous

meetings, the Riverside County Probation Department Victim Awareness Program, and credit recovery.

On December 29, 2020, the Riverside County District Attorney filed a contested disposition hearing brief. The brief stated that the best option for minor to receive the care, treatment, and guidance that was consistent with his best interest, and to ensure public safety, was for him to be placed at YTEC. YTEC would allow him to be held accountable for his actions and was the most appropriate for his circumstances. The brief noted that minor being out of custody posed a major safety risk since his mother was aware that he was driving without a license at the time of the incident, and she did not think much of it, since she also drove without a license. Furthermore, there was a two-week period noted in a home supervision report where it was unclear whether minor was staying with his aunt or his grandfather; thus, it appeared he was often left unsupervised by mother. Moreover, it appeared that mother did not want him to be held accountable for his actions in this case, as she requested all allegations to be dismissed. YTEC would provide a structured environment where minor would not be able to drink alcohol or drive without a license.

The court held a contested disposition hearing on January 25, 2021. The court noted that it read minor's informational memorandum, the People's disposition brief, and the probation department's report filed on September 8, 2020. The People called as a witness Shanda Hills, the probation officer who conducted minor's interview and prepared the September 8, 2020 report. She said minor denied both alcohol and marijuana use. She said she interviewed mother, and mother was unaware of minor's

8

grades, GPA, or credits earned and said he was generally doing well. Hills testified that mother was not holding minor accountable for his actions in this case, since she requested the matter be dismissed and only punished him by having him continue to do his chores. Hill testified that mother was evasive during the interview, as she changed her story multiple times concerning whether she knew minor took her truck on the day of the incident, her knowledge of him being pulled over for driving without a license, and her knowledge of him drinking alcohol. She opined that mother minimized minor's conduct in this case. Because of mother's evasiveness, Hill was concerned about her trustworthiness and willingness to cooperate with the probation department in the future. Considering minor's safety and the safety of the community, and because of the intensive services offered and the structured supervision, Hills recommended placement at YTEC.

Tricia Chadwick, a senior probation officer, also testified. She chaired the Interagency Placement Screening Committee, which consisted of her, a behavioral health representative, a supervising probation officer, a public health nurse, a school representative, and a YTEC representative. She explained that the process for recommending placements included a probation officer submitting a packet prior to a meeting of the committee, and the officer presenting the case to the committee. The presentation entailed going through the youth's social history, discussing the reason the youth was before the court, and noting concerns regarding him and his family. The two voting members on the committee were herself and the behavioral health representative. After discussing the case, they would both make their recommendations, and if they agreed, that was the end of the process; if they disagreed, then the supervising probation

officer would make a recommendation. Chadwick testified that minor's case was screened on July 9, 2020, and there was a consensus as to placement at YTEC. The factors that stood out were the facts of the case, the serious nature of it, and the facts that someone was severely injured, and someone lost their life. Chadwick testified that the programs at YTEC were much more intensive and longer in duration than the out-of-custody California mentor program, TEMPO Program, and victim awareness program. She further testified that she could not think of any program equivalent to the moral reconation therapy program at YTEC. She opined that YTEC's biggest strengths were structure and accountability since all issues were addressed at the same location, with the same therapists on the treatment team; as such, the team could get a sense of whether the youth was being consistent in the different programs. Chadwick said the committee had concerns about mother's ability to effectively supervise minor on home supervision. She further said the committee believed YTEC would benefit minor by ensuring all his needs were addressed intensely in a short period of time (six months), so that he would not reoffend.

Dwayne George, a Behavioral Health Services Supervisor for Riverside County University Health System, also testified. He worked at YTEC and testified concerning various programs offered there, including the substance abuse counseling program and moral reconation therapy program. He opined that minor was suitable for the programs he outlined.

In addition, mother testified at the hearing. She admitted that on January 17, 2020, minor received a citation for driving without a license, speeding, and not having proof of insurance. She was aware that minor did not have a license but let him take her car that day to go and get a cup of coffee. She testified that she did not really approve of him borrowing her car but said "there are circumstances that I have to." As an example, she cited the day he went to get a cup of coffee and was pulled over. Mother said she was aware that driving without a license was illegal, and that her son knew that as well. She also said she did not have a driver's license, but was in the process of getting one. Mother said she gave minor permission to borrow her car about three other times. However, on the day of the current incident (the fourth time), he took the car without her permission. She went to work that day and specifically told him to stay home, but he did not. When asked how often she left him unsupervised, she said he was never alone since either she or her sisters took care of him. However, she admitted he was left alone that day. Mother said she was not aware that minor drank alcohol or used any drugs, and did not know until she was told on the day of the incident.

The probation officer who assisted minor with his home supervision also testified. He said minor was required to be with an approved adult at all times. However, at some point in July, one of the probation officers found out minor was staying at his grandfather's house "now and then." He did not get approval to stay there and violated the terms of his home supervision contract by not reporting it. However, the probation department decided instead of finding him in violation, they would work with the family. The officer further testified that on September 29, 2020, mother admitted to transporting

11

minor to appointments and errands without a driver's license. The officer opined that this behavior set a poor example.

During closing arguments, minor's counsel argued for minor to stay on home supervision since removing him from his home would disrupt the services he was already participating in. She argued that there was no child and family team meeting conducted in preparation for a disposition. The People argued the case came down to supervision and accountability and that YTEC was the best place for that to occur.

The court issued its decision with a review of the facts of the case and a thorough analysis of the parties' positions. It noted that minor admitted to drinking since the age of 15, and that placing him in the community programs proposed by his counsel would be appropriate for a minor who was drinking beer twice a week at the age of 15, smoking marijuana, driving without a license, driving under the influence, and fleeing from the scene of an accident. However, the consequences could not be the same for someone who did all these things and killed a person and seriously injured another. The court found by clear and convincing evidence that minor should be removed from mother's custody and placed at YTEC because mother was incapable of providing proper maintenance, training and education for her son, and minimized his behavior. The court did not believe mother had only known him to drive her car four times. It noted the victim's sister said minor regularly picked up her brother, and she saw him driving on multiple occasions. The court added that the best place for minor was YTEC since he needed the intensive services provided by the same team, 24 hours a day, where they could monitor everything he did, and he would have no distractions. Moreover, the court

12

found that continuance in the home was contrary to minor's welfare since mother failed to hold him fully accountable for his actions and failed to provide the structure and accountability he needed to care less about himself and more about the welfare of others. The court confirmed that minor's counsel went over the terms of the disposition with him. The court adjudged minor a ward of the court, placed his custody and control with the Riverside County Chief Probation Officer, and committed him to YTEC.

## DISCUSSION

### I. Minor's Claim that the Court Erred in Placing Him at YTEC Has Become Moot

In his appellate brief, minor argues the court's placement order should be reversed, and he should continue on home supervision. He specifically contends that under section 706.6, the probation department was required to, but did not, convene a CFT meeting prior to the disposition hearing, and it did not ascertain if there were other relatives who could provide supervision. He also contends that substantial evidence does not support the court's placement findings, since he was in compliance with the terms of his home supervision, there was no evidence his mother could not provide adequate supervision, and remaining on home supervision was in his best interest. However, at oral argument, minor's counsel represented to the court that minor has now completed his placement term at YTEC. Therefore, the challenge to the dispositional order has become moot.

"As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions ' " ' "upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " ' [Citation.] '[A] case becomes moot when a

13

court ruling can have no practical effect or cannot provide the parties with effective relief.' " (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) That is the case here. Since minor has completed his YTEC term, this court cannot change, modify, or order the trial court to review minor's placement at YTEC with a view toward a different dispositional placement order as minor seeks in this appeal. Thus, his claim has become moot.

II. The Probation Condition Prohibiting Minor from Using or Possession Tobacco Should Be Stricken

As one of the probation conditions, the court ordered that minor "not knowingly use or possess tobacco or any tobacco product(s)" (the tobacco condition). He now argues this condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and must be stricken since the law no longer holds minors criminally liable for using tobacco. The People agree.

A juvenile court may impose on a minor on probation "any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) In *Lent*, *supra*, 15 Cal.3d 481, the California Supreme Court articulated the following test to determine whether a probation condition constitutes an abuse of discretion: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Id.* at p. 486.) "This test is conjunctive—all three prongs must be

14

satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)  The *Lent* test applies to juvenile probation conditions.  (*In re P.O.* (2016) 246 Cal.App.4th 288, 294.)

Minor admitted the allegations of gross vehicular manslaughter while intoxicated and driving under the influence of alcohol, causing injury.  The tobacco condition has no relationship to these crimes.  Furthermore, it relates to conduct that is not criminal.  The law no longer holds minors criminally liable for possessing tobacco.  Former Penal Code section 308, subdivision (b), authorized a fine of $75 or community services for persons under 18 who bought or possessed tobacco.[4]  (Former § 308, subd. (b).)  However, that provision now punishes merchants selling tobacco for failing to post a notice stating that selling tobacco products to anyone under 21 years of age is illegal and subject to penalties.  (Pen. Code, § 308, subd. (b).)  Finally, tobacco possession or use is not reasonably related to future criminality.  Accordingly, as the People concede, this probation condition should be stricken.

---

[4]  We note that minor turned 18 on February 28, 2021.

DISPOSITION

We direct the juvenile court to strike the probation condition stating that minor

"not knowingly use or possess tobacco or any tobacco product(s)."  In all other respects,

we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS
J.


We concur:


RAMIREZ
P. J.


McKINSTER
J.

16