Filed 2/6/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D071575 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD269653) |
| BRIAN ISAIAH ACOSTA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge. Affirmed as modified.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Brian Isaiah Acosta pleaded guilty to two counts of felony vandalism and admitted the gang enhancement attached to each count. (Pen. Code,[1] § 594, subds. (a) & (b)(2)(A) & § 186.22, subd. (d).) Pursuant to the plea agreement, Acosta was placed on formal probation for three years on the condition he serve 365 days in custody with the possibility of work furlough, if eligible, after serving 90 days.

Relevant to this appeal, the court also imposed terms and conditions of probation, four of which Acosta challenges in this proceeding: the search of his electronic devices (electronic search condition) (no. 6n); the requirement he stay away from the private residences he had vandalized with graffiti (stay-away condition) (no. 14); the treatment, therapy, and counseling condition (no. 7); and the alcohol (no. 8) and drug (no. 9) conditions. Respondent, the People, concede the treatment, therapy, and counseling condition should be struck, but otherwise contend the remaining terms and conditions were properly imposed.

As we explain, we conclude there is insufficient evidence in this record to support the imposition of the drug condition on Acosta. Accepting respondent's concession, we thus strike the drug and the treatment, therapy, and counseling conditions, but otherwise affirm the judgment of conviction.

---

[1] All further statutory references are to the Penal Code.

## FACTUAL OVERVIEW[2]

Acosta was a known member of the San Diego Varrio Market Street gang (VMS) who went by the monikers "Thakas" and "Thakas1." In mid-November 2016, an eight-count felony complaint was filed against Acosta charging him with "unlawfully and maliciously defac[ing] with graffiti" real and personal property between March and October 2016 causing damage of less than $400 per incident. The complaint alleged all counts were punishable as felonies because Acosta committed the offenses "for the benefit of, at the direction of, and in association with, a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members," inasmuch as he "tagged" the properties with variations of his gang monikers. The total estimated cost to remove the graffiti was $1,017.

In December 2016, Acosta pleaded guilty to counts 1 and 2, as noted. In return for his plea, the balance of the counts was dismissed.

As relevant to this appeal, at his January 2017 sentencing Acosta objected to the imposition of various probation conditions, including the electronic search condition, the alcohol and drug conditions, and the stay-away condition.

---

[2] Because Acosta pleaded guilty, this summary is principally derived from the probation report.

3

DISCUSSION

I

<u>Electronic Search Condition</u>

Probation condition number 6n provides that Acosta shall "[s]ubmit person, vehicle, residence, property, personal effects, *computers and recordable media . . .* to search at any time with or without a warrant, and with or without reasonable cause, when required by P.O. [i.e., a probation officer] or law enforcement officer." Acosta at sentencing opposed the italicized portion of this condition, as noted. In refusing to modify or delete this condition, the court found Acosta committed the crime for the "benefit of a street gang. It is also spray painting. It is the type of behavior that often times taggers photograph those types of crimes and share them and have them on their phone and/or computers. So, I think that is a reasonable link/nexus to the crime under People versus Lent [(1975) 15 Cal.3d 481 (*Lent*)]."

A. *Guiding Principles*

A grant of probation is an act of clemency in lieu of punishment. (*People v. Moran* (2016) 1 Cal.5th 398, 402.) Probation is a privilege, and not a right. A court has broad discretion to impose "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, . . . and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*).) "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise

4

enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' " (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355 (*O'Neil*).)

A condition of probation will not be upheld, however, if it (1) has no relationship to the crime of which the defendant was convicted, (2) relates to conduct that is not criminal, *and* (3) requires or forbids conduct that is not reasonably related to future criminality. (*People v. Olguin* (2008) 45 Cal.4th 375, 379–380 (*Olguin*); see *Lent*, *supra*, 15 Cal.3d at p. 486.) Our high court has clarified that this "test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, at p. 379.)

However, "[j]udicial discretion to set conditions of probation is further circumscribed by constitutional considerations." (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1356.) "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

"Generally, we review the court's imposition of a probation condition for an abuse of discretion." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) However, we independently review constitutional challenges to a probation condition. (*Ibid.*)

B. *Analysis*

Respondent the People do not dispute that the electronic search condition fails the first two *Lent* prongs—the condition has no relationship to Acosta's felony vandalism offenses, which did not involve the use of any electronic communication system or device including a cellular phone, and the use of electronic devices "is not itself criminal." (See *In re Erica R.* (2015) 240 Cal.App.4th 907, 913; *In re J.B.* (2015) 242 Cal.App.4th 749, 754–755.) Therefore, the issue is whether the electronic search condition is reasonably related to preventing future criminality. (See *Olguin, supra*, 45 Cal.4th at p. 379.)

The issue of the validity of an electronic search condition under *Lent* and its progeny is pending before our high court. (See, e.g., *People v. Ermin* (2017) 2017 WL 2929356, Cal.App. 6 Dist., review granted October 25, 2017, S243864; *People v. Nachbar* (2016) 3 Cal.App.5th 1122 (*Nachbar*), review granted Dec. 14, 2016, S238210; *In re A.S.* (2016) 245 Cal.App.4th 758, review granted May 25, 2015, S233932; *In re Mark C.* (2016) 244 Cal.App.4th 520, review granted Apr. 13, 2016, S232849; *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923.) Until we receive further direction, we must undertake to resolve this case as best we can.

Here, the record shows the trial court upheld the reasonableness of the electronic search condition on the basis that Acosta committed counts 1 and 2 for the "benefit" of

the VMS criminal street gang, inasmuch as he spray painted variations of his gang moniker on property ostensibly within or near the gang's territory. The court found that "taggers" such as Acosta oftentimes used an electronic device to photograph graffiti to share with others, including members of his or her own gang. As such, the court found there was a nexus between the electronic search condition and Acosta's future criminality.

The case of *People v. Ebertowski* (2014) 228 Cal.App.4th 1170 (*Ebertowski*) informs our analysis on this issue. The challenged probation conditions in *Ebertowski* required the defendant to provide "1 '. . . all passwords to any electronic devices (including cellular phones, computers or notepads) within his or her custody or control and [to] submit said devices to search at anytime [*sic*] without a warrant by any peace officer' "; and "2 ' . . . to provide all passwords to any social media sites (including Facebook, Instagram and Mocospace) and [to] submit said sites to search at anytime [*sic*] without a warrant by any peace officer.' " (*Id.* at p. 1173.) Like Acosta here, the defendant in *Ebertowski* was a member of a criminal street gang who pleaded no contest to making criminal threats and resisting an officer. (*Id.* at pp. 1172–1173.)

The *Ebertowski* court rejected the defendant's claim that the probation conditions were unreasonable and overly broad. The court noted that the "password conditions" were related to the defendant's future criminality because of his gang affiliation, which "gave [the defendant] the bravado to threaten and resist armed police officers." (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1177.) The court further noted that the only way the defendant "could be allowed to remain in the community on probation without posing an extreme risk to public safety was to monitor his gang associations and

7

activities. The password conditions permitted the probation officer to do so. Consequently, the password conditions were reasonable under the circumstances, and the trial court did not abuse its discretion in imposing them." (*Ibid.*)

The court in *Ebertowski* also concluded the password conditions were not constitutionally overbroad. The court noted that the defendant's privacy rights were "not improperly abridged by the password conditions any more than they [were] by the search condition." (*Ebertowski, supra*, 228 Cal.App.4th at p. 1176.) The court noted that the state had an interest in preventing defendant from continuing his "violent gang associations and activities," and that this interest outweighed the "minimal invasion of [the defendant's] privacy that is involved in the probation officer monitoring defendant's use of his devices and his social media accounts." (*Ibid.*)

Turning to the instant case, the record shows Acosta has been a gang member since at least 2010, or for about seven years. In March of 2010, law enforcement investigated Acosta, then a minor, after Acosta's high school received a tip from an unknown male that Acosta might be in possession of a weapon while on campus. The unknown male indicated a box of "slugs" was missing from his house and that Acosta allegedly "was planning on obtaining a gun and possibly shooting a student at [the] [h]igh [s]chool who was from a rival gang."

On contact at the school, police found a "three-inch paring knife" concealed inside Acosta's jacket. Acosta admitted bringing the knife to school for "protection" because he was worried about being "jump[ed]" by a student from another gang. As a result of this incident, the juvenile court made a true finding in June 2010 that Acosta was in

8

possession of a stabbing instrument on school grounds and assigned Acosta to the "Gang Suppression Unit" for supervision. While on probation for this offense, the record shows Acosta violated his gang conditions on at least two occasions.

In January 2016, police conducted a traffic stop of a vehicle in which Acosta was a passenger. Acosta was found in possession of a loaded .38 caliber semiautomatic handgun. A records check revealed the gun was stolen. Acosta pleaded guilty to having a concealed firearm in a vehicle (§ 25400, subd. (c)(2)), and was granted three years' formal probation and sentenced to 120 days in custody, which sentence was stayed.

About a month before his November 2016 arrest in the instant case and while on probation for the January 2016 incident, police contacted Acosta in a park frequented by members of VMS. The probation report noted that officers had been dispatched to the park because "a group of Hispanic males [were] drinking beer, and yelling out, 'Market Street' up and down the area of Boundary and Market Streets. As officers arrived on scene, they attempted to contact a male, later identified as [Acosta], but he fled before they were able to detain him. Additional contact was made with [four other males, including Acosta's brother], who are all known members of the Market Street criminal street gang. As the four individuals were detained pending further investigation additional responding officers pursued [Acosta] and successfully apprehended him a short time later.

"During the contact with [Acosta], officers observed that he was flushed, his eyes were glassy, and he had the odor of an alcoholic beverage emitting from his person. At the scene where all the men were detained, officers recovered three 32[-]ounce bottles of

9

beer and one 24[-]ounce bottle [of] beer. [Acosta] later admitted that he had a 'little to drink.' He was arrested for violating the terms of his probation. The arrest was treated as a probation violation and no charges were filed."

In the instant offenses, as noted Acosta spray-painted gang graffiti and variations of his gang moniker on private residences and public property in or near VMS territory. He admitted committing such offenses for the benefit of VMS, making them a felony. These incidents were not isolated, but rather were committed by Acosta over about a seven-month period. Despite admitting the crimes benefited VMS, the probation report noted Acosta believed the "gang officers" were being "petty" because in his view, "tagging does not benefit the gang." The probation report found Acosta's statement concerning, given the "effect gang graffiti has on victims and on the neighborhood as a whole."

On this record, we conclude the electronic search condition was reasonably related to Acosta's future criminality. In reaching this conclusion, we recognize there is no indication in the record that Acosta—unlike the defendant in *Ebertowski*—used an electronic device in connection with, or in the commission of, the gang-related offenses. (See *Ebertowski, supra*, 228 Cal.App.4th at p. 1173.) In our view, that is a factor, but not the *only* factor warranting imposition of this condition.

Indeed, the record clearly shows that Acosta continued to associate with VMS gang members despite being repeatedly ordered not to do so. And while associating with fellow gang members, Acosta also engaged in gang-related activities that "benefited" VMS, including spray painting gang graffiti on multiple private and public properties in

10

or near VMS gang territory. Acosta's gang activities also were not merely limited to "taggings," as he was found in possession of a stabbing instrument on school grounds in 2010. While it is not clear from the record whether Acosta was associating with fellow gang members when police found a loaded firearm on his person in January 2016, after stopping a car in which Acosta was merely a passenger, a reasonable inference would support such a finding. At a minimum, the January 2016 incident shows Acosta was engaging in more serious activities than merely "tagging" properties with gang-related graffiti.

The electronic search condition will allow a probation officer to ensure Acosta is complying with the "gang conditions" of his probation. Such conditions include not knowingly associating with members of VMS and not wearing or displaying any item or article of clothing "evidencing affiliation with/membership in the [VMS] gang." Given that Acosta's performance on probation "can only be rated as poor," as noted by the probation report, "due to his continued association with known gang members, participation in gang activity, and failure to remain law-abiding," findings that are amply supported on this record, we conclude the court properly exercised its discretion when it imposed the electronic search condition to "closely monitor" Acosta. (See *Ebertowski, supra*, 228 Cal.App.4th at p. 1177.)

We also independently conclude the electronic search condition was narrowly tailored so as to limit the impact on Acosta's "constitutional rights to privacy, speech, and association." (See *Ebertowski, supra*, 228 Cal.App.4th at p. 1175; see also *Sheena K.*, *supra*, 40 Cal.4th at p. 890 [noting a "probation condition that imposes limitations on a

11

person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad"].)

Initially, we note the electronic search condition imposed in the instant case was less intrusive that the "passwords conditions" imposed on the gang defendant in *Ebertowski*. And for good reason: unlike the defendant gang member in *Ebertowski*, there is no evidence Acosta in the instant case used an electronic device to promote his gang, including on social media. In our view, *Ebertowski* supports the principle that probation conditions should reflect the unique circumstances of each case to ensure such conditions do not sweep too broadly and unjustly impact an individual's constitutional rights. Here, we independently conclude the electronic search condition was narrowly tailored to the circumstances of the instant case, as Acosta was not required to disclose any passwords including to any social media account as a condition of his probation.

Moreover, as noted Acosta challenged only the electronic search portion of condition 6n. The electronic search condition will assist a probation officer in implementing the unchallenged search, association, and gang conditions that also were imposed in order to monitor Acosta's gang activity.

Acosta contends the electronic search condition should be modified, if it is to be imposed at all. However, we are unable to discern how that could be done in the instant case, as in our view access to Acosta's electronic devices is the best way to determine if he "is ridding himself of his gang associations and activities, as required by the terms of his probation, or is continuing those associations and activities, in violation of his probation." (See *Ebertowski*, *supra*, 228 Cal.App.4th at p. 1175; compare *In re P.O.*

12

(2016) 246 Cal.App.4th 288, 297–298 [noting the requirement a minor submit his "electronics including passwords" to search with or without a warrant was overbroad and was thus modified to limit such searches of electronic devices and/or accounts to "media of communication reasonably likely to reveal whether he is boasting about drug use or otherwise involved with drugs," when there was no evidence minor was buying or selling drugs in connection with his misdemeanor public intoxication offense, when the goal of minor's probation was to facilitate his "rehabilitation," and when the minor's needs were not "severe"].)

Our conclusion that the state's interest in public safety outweighs the slight invasion of Acosta's privacy that results from a probation officer having access to Acosta's electronic devices is buttressed by Acosta's poor performance on probation, which was a direct result of his gang activities, and by his failure to acknowledge the instant offenses benefited the VMS criminal street gang. (See also *People v. Peck* (1996) 52 Cal.App.4th 351, 362 [noting the condition that the defendant not use or possess a controlled substance (i.e., marijuana) was "necessary to serve public safety" because the defendant admitted to smoking marijuana several times every day and then driving his truck and pulling a 16-foot trailer while impaired to various jobsites, where he operated "motorized equipment" while also under the influence].)

13

II

Stay-Away Condition

Acosta contends the condition requiring him to stay away from the private residences he vandalized with gang graffiti (no. 14) was unreasonable under *Lent* because he was not ordered to stay away from the public properties he similarly defaced and because there was no evidence he harbored any "animosity towards the property owners."

We conclude the stay-away condition is reasonably related to the offenses Acosta pleaded guilty to in the instant case. (See *Olguin, supra*, 45 Cal.4th at pp. 379–380; see *Lent*, *supra*, 15 Cal.3d at p. 486.) Indeed, count 1 involved gang-related graffiti spray painted by Acosta on the exterior wall of a private residence located on Market Street ostensibly within VMS gang territory. Count 2 likewise involved gang graffiti Acosta spray painted on the exterior wall of a private residence also in or near VMS territory. The stay-away condition listed both such residences and one other private residence that involved count 8, which was dismissed as part of the plea agreement.

We also conclude the stay-away condition is reasonably related to future criminality. Although Acosta disputed that gang graffiti benefited a gang, it is common knowledge that criminal street gangs "tag" property to "announc[e] their presence in and enforce their turf to instill fear [in] persons in the community," not to mention rival gang members. (See *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 872.) Requiring Acosta to stay away from the private residences he already vandalized will

14

reduce both the chances of him reoffending and the impacts, including fear, the VMS street gang has on such residents and the community in which they live.[3]

III

Remaining Conditions

Acosta also contends the alcohol (no. 8) and/or drug (no. 9) conditions were unreasonable and should be struck under *Lent.* We first turn to the alcohol condition.

Although Acosta was over 21 years old and there was no evidence Acosta was under the influence of alcohol when he committed the current offenses, we conclude the court properly exercised its discretion in imposing the alcohol condition on Acosta. (See *Olguin*, *supra*, 45 Cal.4th at pp. 380–381; *Lent*, *supra*, 15 Cal.3d at p. 486.)

As summarized *ante*, about a month before Acosta's arrest in the instant case police were dispatched to a park inside VMS territory where its members were known to congregate, after receiving a report of a group of Hispanic males drinking alcohol and "yelling" gang references to "Market Street." One of those males was Acosta, who ran from the scene but was apprehended by police shortly thereafter. As it turns out, the males were all VMS gang members.

On contact, police observed Acosta was "flushed," his eyes were "glassy" and he smelled of alcohol. Acosta, who was confrontational with officers, claimed he allegedly only had a "little to drink." Police later found three 32-ounce and one 24-ounce bottles of beer. As part of the grant of formal probation in connection with his possession of the

---

3       Acosta does *not* argue the stay-away condition is constitutionally overbroad. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

15

loaded firearm stemming from the January 2016 incident, it appears Acosta was required to submit to alcohol and drug testing. The record shows between May and September 2016, Acosta submitted 10 urinalyses that were negative for any such substances.

Courts recognize that alcohol use is accompanied by a "a lessening of internalized self-control" and that alcohol consumption impairs judgment and is not "conducive to controlled behavior." (*People v. Smith* (1983) 145 Cal.App.3d 1032, 1034–1035.) As noted, Acosta has repeatedly violated probation by continuing to associate with VMS gang members. In addition, Acosta consumed alcohol and did so in the company of other gang members as recently as October 2016, when he was arrested for a probation violation stemming from the incident in the park. On this record, we thus conclude the court properly exercised its discretion when it provided the probation department with the discretion to monitor Acosta's alcohol consumption to help keep him compliant with the terms of his probation.

However, we reach a different conclusion with respect to the drug condition (no. 9). The probation report notes that Acosta "tried" marijuana when he was 13 years old, or about 10 *years* before his arrest for the current offenses. Unlike his alcohol consumption, there is no evidence in the record that Acosta uses or used, or sold, drugs including marijuana during this 10-year period. We thus conclude the imposition of the drug condition was unreasonable and should be struck. (See *Olguin*, *supra*, 45 Cal.4th at pp. 380-381; *Lent*, *supra*, 15 Cal.3d at p. 486.)

16

Finally, we agree with the parties that the treatment, therapy, and counseling condition (no. 7) should be struck as there is no evidence in the record that Acosta suffered from any mental health issues, took any medication for such issues, or has any condition requiring such treatment.  (Compare, *People v. Petty* (2013) 213 Cal.App.4th 1410, 1417 [drug treatment program was an appropriate condition of probation for a defendant with mental health issues]; *In re Todd L.* (1980) 113 Cal.App.3d 14, 20–21 [noting psychological counseling and treatment may be ordered by a court where the social history of the probationer suggests that it may help to prevent future criminality].)

## DISPOSITION

The drug (no. 9) and the treatment, therapy, and counseling (no. 7) conditions are stricken.  In all other respects, the judgment of conviction is affirmed.  The superior court is directed to amend the probation order of Acosta accordingly.


BENKE, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

17