Filed 11/2/22  P. v. Ochsenfeld CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>BARRY R. OCHSENFELD,<br><br>　　　Defendant and Appellant. | A163657<br><br>(Alameda County Super. Ct. No. CR015736) |

After angrily threatening his estranged wife and mother and violently and unsuccessfully attempting to enter their Fremont, California residence early one morning, defendant Barry R. Ochsenfeld led police on a high-speed chase of several miles before he was arrested and charged with crimes related to these events.  The trial court ultimately accepted his no contest plea to felony driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer and placed him on probation for two years.  Subsequently, the court imposed various probation conditions, four of which Ochsenfeld challenges on appeal on a variety of grounds.  The Attorney General contends we must dismiss Ochsenfeld's appeal because he did not obtain a certificate of probable cause from the trial court and that all but one of Ochsenfeld's claims lack merit.  We conclude Ochsenfeld did not need a certificate of probable cause.  We affirm two of the

1

probation conditions he challenges, affirm the third as modified by us, and strike the fourth and remand the matter to the trial court for further consideration consistent with our opinion.

## I. BACKGROUND

In January 2020, the Alameda County District Attorney's Office filed an information charging Ochsenfeld with driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer, a felony (count one; Veh. Code, § 2800.2, subd. (a)); making terrorist threats against his estranged wife, Denise Ochsenfeld, and his mother, Bonnie Ochsenfeld[1] (counts two and three; Pen. Code, § 422, subd. (a)), alleged to be serious felonies (Pen. Code, § 1192.7, subd. (c)); and misdemeanor vandalism (count four; Pen. Code, § 594, subd. (a)).

These counts were based on evidence presented at a January 2020 preliminary hearing. Denise testified that she woke up shortly before 7:00 a.m. on June 18, 2018, at her Fremont residence, which she shared with a baby daughter, Bonnie and a roommate, to text messages from Ochsenfeld to answer the door and asserting "stuff about getting me and the police." In the previous weeks and months, Ochsenfeld had threatened daily to harm her and to take their daughter. He had also asked her, " 'Do you wanna watch me die on the front lawn,' " which she "took as more or less suicide by cop."

That morning, Denise saw through the glass window of the front door of her residence that Ochsenfeld was there, yelling. She did not let him in because she was scared of him. Ochsenfeld banged on the door, cracked it

---

[1] For clarity's sake, we will refer to Ochsenfeld's ex-wife and mother by their first names. We mean no disrespect by doing so.

2

and stabbed it, leaving knife marks on it.  He also went to the back door, and then left before the police arrived.

Bonnie testified that she also received text messages from Ochsenfeld that morning threatening her life and that he had made these threats before. She heard him yelling and heard loud noises at the front door.  She understood from Denise that Ochsenfeld had yelled and screamed in front of the house the night before that he wanted the police to come so he could fight them and "they could take him out, basically."  At the time of the incident, Bonnie had a restraining order against Ochsenfeld, who had not lived at the residence since February 2017.  Bonnie knew he owned a gun and several knives.

A Fremont, California police officer testified that she was dispatched at 6:55 a.m. on the morning of the incident to Denise and Bonnie's Fremont residence.  Denise told her what had occurred that morning.  She and Bonnie showed the officer Ochsenfeld's threatening text messages and the officer observed damage to the front door.  Denise said she believed Ochsenfeld had three firearms, but did not know where they were at the time.  The officer confiscated seven firearms from the residence that Denise said belonged to Ochsenfeld.

The officer broadcasted Ochsenfeld's description and vehicle, called Ochsenfeld's cell phone number and spoke to him.  He was "extremely agitated and irate."  Police detained him a few hours later in the general area of the residence.  After he was told his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, Ochsenfeld admitted damaging the front door of the residence, unintentionally he said, and sending the text messages.  He denied owning the confiscated firearms.

Another Fremont police officer testified that he located Ochsenfeld in a car that same morning in the area of the residence and turned on his marked police car lights and siren. Ochsenfeld did not yield before leading the officer on a four-and-a-half mile chase, during which he drove at about 110 to 120 miles per hour and ran four red lights.

The parties reached a negotiated disposition of Ochsenfeld's case under which he agreed to plead no contest to count one, driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer in violation of Vehicle Code section 2800.2, subdivision (a), in exchange for dismissal of the other charges and charges in multiple other cases, with restitution reserved in all of the cases. The parties further agreed that he would be released from custody that day, placed on two years of felony probation, serve 180 days in county jail and the remainder of the time with an ankle monitor, submit a DNA sample pursuant to Penal Code section 296, be subject to a "four-way search clause," pay a restitution fund fine and be subject to a criminal protective order regarding Bonnie, Denise, the Fremont residence and a third party. The parties stipulated that a police report provided a factual basis for the plea. The court accepted Ochsenfeld's plea and found him guilty of violating Vehicle Code section 2800.2, subdivision (a).

The trial court suspended imposition of sentence and placed Ochsenfeld on two years' felony probation subject to certain fees and fines and various probation conditions, four of which are the subject of this appeal. Ochsenfeld did not object to any of the probation conditions.

Ochsenfeld filed a timely notice of appeal based on a variety of matters and requested the trial court issue a certificate of probable cause. The record does not contain any certificate of probable cause.

4

## II. DISCUSSION

Ochsenfeld challenges four probation conditions imposed by the trial court on a variety of grounds. With one exception, the Attorney General argues that some of his claims are forfeited and that all of them lack merit. The Attorney General first contends, however, that we should dismiss his appeal without considering the merits because Ochsenfeld did not obtain a certificate of probable cause.

### A. *Ochsenfeld Does Not Need a Certificate of Probable Cause*

Under Penal Code section 1237.5, a defendant cannot appeal from a judgment of conviction upon a plea of no contest unless he has filed with the trial court a sworn written statement "showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" and the trial court "has executed and filed a certificate of probable cause for such appeal." (Pen. Code, § 1237.5.) Also, "[a] defendant may waive the right to appeal as part of a plea bargain where the waiver is knowing, intelligent and voluntary." (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815, citing *People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*).)

Under California Rules of Court, rule 8.304, a defendant who has entered a plea of no contest does *not* need to obtain a certificate of probable cause if the defendant does so "on grounds that do not affect the validity of the plea or admission," and when the appeal is based on, among other things, "[t]he sentence or other matters occurring after the plea or admission that do not affect the validity of the plea or admission." (Cal. Rules of Court, rules 8.304(b)(2) & (b)(2)(B).) Ochsenfeld's appeal is based in part "on the sentence or other matters occurring after the plea that do not affect the validity of the plea" and focuses entirely on four probation conditions that the court imposed after he had entered his plea.

According to the Attorney General, Ochsenfeld needed to obtain a certificate of probable cause because he agreed to a provision in his change of plea form that states, "I hereby give up my right to appeal from this conviction, including an appeal from the denial of any pretrial motions." The Attorney General argues this waiver was so broad as to include a waiver of his right to appeal from the four probation conditions.

"[A] waiver that is nonspecific, e.g., 'I waive my appeal rights' or 'I waive my right to appeal any ruling in this case,' " is considered a general or broad waiver. (*Panizzon*, *supra*, 13 Cal.4th at p. 85, fn. 11.) "A broad or general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error. [Citation.] Thus, a waiver of appeal rights does not apply to ' "possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.' " (*People v. Mumm*, *supra*, 98 Cal.App.4th at p. 815.)

A defendant may appeal from errors in setting probation conditions and sentencing that a court makes subsequent to a negotiated plea where the matters involved are not a part of the plea agreement. (*People v. Patton* (2019) 41 Cal.App.5th 934, 940–943 [rejecting claims that a defendant's waiver of " 'any sentence stipulated herein' " and agreement to " 'reasonable' " probation conditions barred his challenge to subsequently imposed probation conditions]; *People v. Narron* (1987) 192 Cal.App.3d 724, 730 [no certificate of probable cause required to challenge the validity of a probation condition "because the conditions of probation were not part of the plea bargain and were imposed after entry of the plea"]; *Panizzon*, *supra*, 13 Cal.4th at p. 85 [a general waiver "will not be construed to bar the appeal of sentencing errors

6

occurring subsequent to the plea" regarding matters not contemplated by the plea agreement]; *People v. Buttram* (2003) 30 Cal.4th 773, 790 ["absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence"].)

The Attorney General contends Ochsenfeld's waiver of the right to appeal "from this conviction" included the four probation conditions. It did not. "Conviction" is defined in relevant part as "the act of convicting someone, as in a court of law; a declaration that a person is guilty of an offense." (Dictionary.com <https://www.dictionary.com/browse/conviction> [as of November 2, 2022].) Our Supreme Court has held that a "conviction" occurs upon the determination of guilt. (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 725, fn. 9 ["A plea of guilty constitutes a conviction"], disapproved in part on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19; *People v. Williams* (1945) 27 Cal.2d 220, 228 ["a 'conviction' for purposes of impeachment means nothing more than a verdict of guilty"].) Penal Code section 1203, subdivision (a) defines "probation" as something altogether different: "the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." In other words, a trial court's probation orders are post-conviction events.

The Attorney General offers no definitions for "conviction" or "probation." Instead, he relies on *People v. Espinoza* (2018) 22 Cal.App.5th 794. There, our colleagues in Division One of this appellate district held that a certificate of probable cause was needed to challenge a probation condition where defendant stated on her plea form, " '**I give up my right of appeal**,' "

7

concluding that this was a broad waiver that "includes her right to appeal the imposition of probation terms." (*Id*. at pp. 797, 801–803.) But that waiver was of the right to appeal altogether. Here, Ochsenfeld limited his waiver to the right to appeal his conviction, which does not suggest that at the time he gave it he contemplated the probation conditions he challenges in this appeal. *Espinoza*, therefore, is inapposite.

In sum, the Attorney General's argument that Ochsenfeld's appeal must be dismissed for lack of a certificate of probable cause is without merit.

### B. *Ochsenfeld's Challenges to the Four Probation Conditions*

#### 1. Standard of Review

"Generally, we review the court's imposition of a probation condition for an abuse of discretion. [Citations.] However, we review constitutional challenges to a probation condition de novo." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

#### 2. The "Regular" Employment Probation Condition

First, Ochsenfeld challenges the court's imposition of the probation condition that he "[s]eek and maintain regular employment or attend school or job training" as unconstitutionally vague on its face because the order does not provide sufficient notice or guidance as to what "regular employment" means. He argues that "[t]he condition might be modified to require 'gainful' employment."[2]

---

[2] The Attorney General concedes that Ochsenfeld has not forfeited his constitutional challenges to probation conditions as vague or overbroad on their face by not objecting below because each presents a " 'pure question[] of law that can be resolved without reference to the particular sentencing record developed in the trial court.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*), quoting *People v. Welch* (1993) 5 Cal.4th 228, 235 (*Welch*).)

"The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]' [Citation.] . . . In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific context,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "reasonable specificity." ' [Citation.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890, italics omitted.)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) But "[m]erely because a condition could have been drafted with more precision does not make it unconstitutional." (*People v. Holzmann* (2018) 18 Cal.App.5th 1241, 1246.)

Ochsenfeld does not argue that the trial court exceeded its authority to order him to maintain employment, schooling, or job training. Such an argument would have failed. (*People v. Sanchez* (2019) 38 Cal.App.5th 907, 919 [rejecting a defendant's constitutional challenge to a probation condition requiring her to seek and "maintain training, schooling, or employment" as approved by her probation officer because Penal Code section 1203.1,

9

subdivision (d) "specifically authorizes a trial court to 'require as a condition of probation that the probationer go to work and earn money . . .' "].)[3]

Instead, Ochsenfeld argues the term "regular" is too vague to give him notice of what is required because, for example, "it is not clear whether working online or from home would constitute a violation, or what hours would be proper." We disagree. "Regular" is not mysterious. It is defined in relevant part as "characterized by fixed principle, uniform procedure, etc.," such as "regular income," and "recurring at fixed times; periodic," such as "regular bus departures; regular meals." (Dictionary.com <https://www.dictionary.com/browse/regular> [as of November 2, 2022].) Other words for it include "even, formal, orderly" and "established, fixed." (*Ibid*.) In short, Ochsenfeld is expected to maintain a fixed schedule of employment, schooling, or job training. This is sufficiently clear; and it is clearer than "gainful," defined as "profitable, lucrative." (Dictionary.com <https://www.dictionary.com/browse/gainful> [as of November 2, 2022].)

Ochsenfeld argues "regular" is like the term "satisfactory" as discussed in *In re Angel J.* (1992) 9 Cal.App.4th 1096. *In re Angel J.* held that a probation condition requiring the defendant to maintain "satisfactory grades" was unconstitutionally vague and ordered that it be defined as "passing grades in each graded subject." (*Id*. at pp. 1100–1103.) But "satisfactory" as used in *In re Angel J.* contains none of the definitional contours that "regular" does here; one could reasonably think "satisfactory grades" refers to a C

---

[3] Penal Code section 1203.1, subdivision (d) provides, "In all cases of probation the court may require as a condition of probation that the probationer go to work and earn money for the support of the probationer's dependents or to pay any fine imposed or reparation condition, to keep an account of the probationer's earnings, to report them to the probation officer and apply those earnings as directed by the court."

10

average or to passing grades. *In re Angel J.*, therefore, is unpersuasive authority for Ochsenfeld's vagueness challenge, which lacks merit.

### 3. The "Dangerous Drugs" Probation Condition

Next, Ochsenfeld challenges on two grounds the probation condition that he was "not to use, own, possess, or traffic in narcotics or dangerous drugs or knowingly associate with anyone who does."

First, Ochsenfeld argues "dangerous drugs" is unconstitutionally vague and overbroad on its face and should be replaced with "controlled substances." He contends that various drugs, including prescription drugs, could be considered dangerous when used for legitimate medical purposes or taken in sufficient quantities, and he points out that the definition of "dangerous drug" in Business and Professions Code section 4022 includes a drug that cannot be taken without prescription. (Bus. & Prof. Code, § 4022, subd. (a).) He contends the term should be replaced with "controlled substances."

The Attorney General agrees that the term "dangerous drugs" is vague and overbroad for the reasons asserted by Ochsenfeld. He has no objection to our modification of the probation condition to replace "dangerous drugs" with "controlled substances" as Ochsenfeld suggests. We agree as well and will order this modification.

Second, Ochsenfeld argues that this drug parole condition violates *People v. Lent* (1975) 15 Cal.3d 481, superseded in part on other grounds as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6, and should be struck in its entirety. *Lent* held that "[t]he Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the

11

offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent*, at p. 486.)

Ochsenfeld contends that, because he "does not have a history of substance abuse, [the probation condition] would not likely relate to preventing future criminality." He acknowledges that he has forfeited this claim by not objecting to the condition below on *Lent* grounds (*Welch*, *supra*, 5 Cal.4th at pp. 234–237), but argues his trial counsel's failure to object constituted ineffective assistance of counsel.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense." (*People v Benavides* (2005) 35 Cal.4th 69, 92–93, citing *Strickland v. Washington* (1986) 466 U.S. 668, 687–688 and *People v. Ledesma* (1987) 43 Cal.3d 171, 216.) When ineffective assistance of counsel is raised in a direct appeal, we will reverse only if the record affirmatively discloses no rational tactical purpose for trial counsel's act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437.)

The record does not affirmatively show that Ochsenfeld's trial counsel had no rational tactical purpose for not objecting to the drug probation condition on *Lent* grounds. Ochsenfeld denied to the probation department that he had any history of substance abuse, and said only that he tried marijuana once or twice at age 16. But Denise reported to the department that she "knew [Ochsenfeld] used to use methamphetamine but she believed he wasn't using it anymore." Although there was no evidence that drugs were involved in the incident, the incident itself showed that Ochsenfeld was emotionally unstable, as when he suggested to Denise that he hoped the police would shoot him; had difficulty controlling himself, as when he sent

12

threatening text messages to Denise and Bonnie, woke them up early in the morning demanding they let him in their residence and damaged their front door; and was capable of exercising poor judgment, as when he led the police on a high-speed chase. His trial counsel could have reasonably concluded that it was useless to object to the drug probation condition on *Lent* grounds because it was within the trial court's discretion to impose, in order to prevent Ochsenfeld from again using methamphetamine and thereby prevent any future criminality and aid his rehabilitation.

Ochsenfeld cites two cases to argue that the drug probation condition violates *Lent*. Neither is persuasive. The first case is *People v. Acosta* (2018) 20 Cal.App.5th 225, vacated with directions (2019 Cal.LEXIS 7309, S247656) to reconsider the cause in light of *In re Ricardo P.* (2019) 7 Cal.5th 1113. In *People v. Cruz Cruz* (2020) 54 Cal.App.5th 707, the other case Ochsenfeld cites, the appellate court held the conditions that the defendant not use marijuana and submit to chemical testing and a drug assessment were unreasonable under *Lent* because marijuana was a legal substance, the defendant's offense was not drug-related, and there was no evidence he had a drug problem or was more likely to commit crimes when under the influence of marijuana. (*Id*. at pp. 709, 711–713.) But here, methamphetamine *is* an illegal substance and the record supports the conclusion that Ochsenfeld used it in the past and might in his present state consider using it again.

In short, Ochsenfeld's ineffective assistance of counsel argument regarding the drug probation condition is without merit.

### 4. The Travel Probation Condition

Next, Ochsenfeld argues on two grounds that the probation condition that he was "not to leave the state of California without permission from your probation officer" was improper.

13

First, Ochsenfeld argues this travel condition is unconstitutionally overbroad on its face and improperly delegates judicial decision-making powers to the probation officer. He contends it should be modified to require that he "notify" his probation officer of his plans to travel out of state rather than seek permission.

Ochsenfeld's overbreadth argument is unpersuasive. "While all citizens enjoy a federal constitutional right to travel from state to state [citation], that right is not absolute and may be reasonably restricted in the public interest." (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1195.) A condition that limits interstate travel without permission "is closely tailored to the purpose of monitoring [a] defendant's travel to and from California not by barring his ability to travel altogether but by requiring that he first obtain . . . permission before doing so." (*Ibid*.)

Ochsenfeld does not provide any argument or authority to support his contention that the travel condition improperly delegated judicial authority to his probation officer. Therefore, we deem it waived. (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355, fn. 2 [" ' "Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion" ' "].)

Second, Ochsenfeld argues that the travel probation condition should be stricken as unreasonable under *Lent* because there is no evidence that his leaving California without permission contributed to his crime or would contribute to his further criminality. Ochsenfeld acknowledges that he has forfeited this appellate claim by his failure to object to the probation condition below (*Welch*, *supra*, 5 Cal.4th at pp. 234–237). He once more argues that his trial counsel's failure to object constituted ineffective assistance of counsel because nothing in the record indicates his leaving

14

California without permission contributed to his crime or would contribute to his future criminality.

As we have already discussed, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense." (*People v Benavides*, *supra*, 35 Cal.4th at pp. 92–93.) When ineffective assistance of counsel is raised in a direct appeal, we will reverse only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission. (*People v. Lucas*, *supra*, 12 Cal.4th at pp. 436–437.)

The record does not affirmatively disclose that Ochsenfeld's trial counsel had no rational tactical purpose for his lack of objection to the travel probation condition on *Lent* grounds. Counsel could have reasonably believed his objection would be overruled in light of the circumstances of Ochsenfeld's case. In *In re Daniel R.* (2006) 144 Cal.App.4th 1, the appellate court concluded that a probation condition allowing the minor to travel to Mexico only with prior permission from a probation officer and under the custody of his parents was reasonably related to the minor's rehabilitation, even though such travel was not criminal or related to the minor's crime. (*Id*. at pp. 7–8.) The court concluded the condition was reasonably related to the minor's rehabilitation and thus related to future criminality. (*Ibid*.; see *People v. Moran*, *supra*, 1 Cal.5th at p. 406 ["Imposing a limitation on probationers' movements as a condition of probation is common, as probation officers' awareness of probationers' whereabouts facilitates supervision and rehabilitation and helps ensure probationers are complying with the terms of their conditional release"].)

As in *In re Daniel R.*, the travel condition here is reasonable even though traveling outside of California is not itself criminal or related to any

crime Ochsenfeld committed. The condition is reasonably related to Ochsenfeld's rehabilitation. His actions in the course of the incident—which indicate his emotional instability, his difficulty controlling himself and his exercise of poor judgment—demonstrate he could well need significant supervision in order to succeed on probation. Knowledge of his whereabouts is particularly important because he threatened the lives of Denise and Bonnie and led the police on a reckless high-speed chase that endangered public safety. His leaving the state could interfere with the probation officer's ability to effectively supervise him and, therefore, was reasonable under *Lent*.

Ochsenfeld relies on *People v. Soto* (2016) 245 Cal.App.4th 1219 to argue the travel condition was unreasonable under *Lent*. *Soto* is unpersuasive authority. There, the court held a probation condition requiring the defendant to obtain approval before changing his residence from Monterey County or leaving the State of California was not reasonably related to future criminality because nothing in the record suggested his leaving the county or state would have an effect on his rehabilitation. (*Id.* at p. 1228.) That is not the case here.

In short, Ochsenfeld's ineffective assistance of counsel argument regarding the travel condition, lacks merit.

### 5. The Education, etc. Probation Condition

Finally, Ochsenfeld challenges the probation condition that he "must submit to such education, counseling, treatments or tests as directed by your probation officer including, but not limited to, urinalysis" on the grounds that it is unconstitutionally vague on its face, violates the separation of powers doctrine by delegating judicial authority to the probation department, and is unreasonable under *Lent*.

The Attorney General argues the merits, but first contends that Ochsenfeld has forfeited this challenge by not objecting to the education, etc. condition below.

We conclude Ochsenfeld has not forfeited his claim that the education, etc. condition is unconstitutionally vague and an improper violation of the separation of powers doctrine on its face. "An as-applied constitutional challenge is forfeited unless previously raised. (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.) ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." ' (*Id*. at p. 881.) However, the forfeiture rule does not extend to facial constitutional challenges presenting pure questions of law that can be resolved without referring to the particular sentencing record developed below. (*Id*. at pp. 885, 889.) A facial challenge 'does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts.' (*Id*. at p. 885.) The claim is that a condition cannot have *any* valid application, without relying on any facts in the sentencing record." (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.) Thus, constitutional challenges to probation conditions based on vagueness or overbreadth that raise pure questions of law are not subject to the forfeiture rule. (*Sheena K.*, *supra,* at pp. 887–888.) Because Ochsenfeld's facial challenges to the probation condition involve pure questions of law, he has not forfeited them.

Regarding the merits of Ochsenfeld's facial challenges, as we have noted, the challenged condition requires him to "submit to education, counseling, treatments or tests as directed by your probation officer." Ochsenfeld argues it "grants the probation officer unlimited discretion to choose any of these, and it is not sufficiently precise to provide notice to appellant of the type of program he would be required to complete. Because

17

of the wide range of programs that could conceivably be characterized as education or counseling, the court's order is largely open-ended. It gives the probation officer unfettered discretion to order [Ochsenfeld] to attend any type of counseling or education program including those wholly unrelated to his offense or rehabilitation."

We do not agree with Ochsenfeld that the condition is unconstitutionally vague on its face. It allows the probation officer to direct Ochsenfeld to engage in particular programming, treatments and tests as decided by the officer and, therefore, he will not be uncertain about how to comply with those directions. (See *In re David C.* (2020) 47 Cal.App.5th 657, 668–669 [conditions requiring minor to submit to psychiatric evaluation and psychological assessments related to sex offender treatment "withstand minor's vagueness challenge because he will be directed to submit to certain evaluations and assessments"].)

We agree with Ochsenfeld, however, that the condition—other than that he submit to urinalysis—is an unconstitutional delegation of the court's judicial authority.

Article III, section 3 of the California Constitution states, "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." Penal Code section 1203.1 "gives trial courts broad discretion to determine whether to grant an eligible defendant probation, and if so, what terms of probation will promote rehabilitation and protect public safety." (*People v. Hall* (2017) 2 Cal.5th 494, 498.)

The broad discretion conferred on trial courts to formulate terms and conditions of probation "is not boundless; the authority is wholly statutory, and the statute furnishes and limits the measure of authority which the court

18

may exercise." (*People v. Cervantes* (1984) 154 Cal.App.3d 353, 356, superseded by statute on other grounds as stated in *People v. DiMora* (1992) 10 Cal.App.4th 1545, 1549.) "[N]o statutory provision sanction[s] a delegation of unlimited discretion to a probation officer" to implement or interpret probationary terms. (*People v. Cervantes*, at p. 358.) "[T]hese determinations are essentially judicial functions." (*Ibid*.)

As explained in *People v. O'Neil, supra*, 165 Cal.App.4th 1351: "There are many understandable considerations of efficiency and practicality that make it reasonable to leave to the probation department the amplification and refinement of a [probation condition]. The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation." (*Id*. at pp. 1358–1359.)

Where a trial court unequivocally imposes a requirement on the defendant, therefore, but subjects the defendant to the "approval" or "direction" of a probation officer, such delegations are permissible. (See *People v. Penoli* (1996) 46 Cal.App.4th 298, 307–309 [not improper to delegate to probation selection of the specific residential drug rehabilitation program for defendant and determine whether he successfully completed it].) "The trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*Id*. at p. 308.)

But here, the trial court did *not* order that Ochsenfeld submit to any "education, counseling, treatments or tests" (other than urinalysis), the details of which were to be determined by the probation department. Rather, the trial court gave the probation department unfettered discretion to decide in the first place whether Ochsenfeld should submit to any "education, counseling, treatments or tests." Further, the trial court—other than its reference to urinalysis—gave no hint as to what type of education, counseling, or treatment programs it wanted the probation department to consider for Ochsenfeld.

The court's education, etc. probation condition, therefore, was an improper delegation of its judicial authority. (See *People v. Cervantes*, *supra*, 154 Cal.App.3d at pp. 358–361 [improper delegation of judicial authority where there was no statutory provision allowing delegation of unlimited discretion to a probation officer "to determine the propriety, amount, and manner of payment of restitution"]; *People v. Smith* (2022) 79 Cal.App.5th 897, 901, 903 [in a case decided by Division Five of this appellate district after briefing was completed here, held, a probation condition violated the separation of powers doctrine by delegating to the probation officer discretion to order defendant to attend a residential "treatment/therapy/counseling program," as opposed to an outpatient program]; *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817–818 [court directing party to undergo therapy or counseling for as long as the doctor deemed necessary and to " 'comply and cooperate in any way requested' " by the doctor held an invalid delegation of judicial authority].)

The Attorney General argues that Ochsenfeld is not actually asking this court to conduct a facial challenge to the condition because we "must consider the condition in the context in which the condition was imposed in

20

order to determine if it is unconstitutional." We disagree. Our analysis demonstrates there is no need to examine the record in light of the unfettered discretion the trial court gave to the probation department to decide in the first instance whether Ochsenfeld should submit to any "education, counseling, treatments or tests."

The Attorney General further argues that the condition "does not grant the probation officer unfettered discretion to decide what types of treatment, education, counseling, or tests to order" for Ochsenfeld because "[t]he record in this case shows various areas where [Ochsenfeld] could benefit from treatment education, and counseling" as it "makes clear that he had anger issues, had engaged in erratic behavior, and had used methamphetamine," and "the probation report noted that [Ochsenfeld] needed therapy to control his anger." Thus, the Attorney General asserts, "[t]here is no basis to believe, based upon this record, that the probation officer has or will order [Ochsenfeld] to participate in any education, counseling, or tests unrelated to these areas." He also points out that "[a] probation condition should be given 'the meaning that would appear to a reasonable, objective reader' " and that we should not presume that a probation officer will issue arbitrary or capricious directives. (*People v. Olguin* (2008) 45 Cal.4th 375, 382–383.)

These arguments are unpersuasive. The separation of powers issue Ochsenfeld raises has nothing to do with whether the record suggests he would benefit from certain programming and the like or whether the probation department will act reasonably or arbitrarily or capriciously. The issue is whether the trial court improperly delegated its judicial authority to the probation department. Where the trial court gave no indication at the sentencing hearing what if anything it thought appropriate for Ochsenfeld to submit to—again, other than urinalysis—we can only reach one conclusion:

21

the trial court left this issue up entirely to the probation department. This was an unconstitutional delegation of its judicial authority that cannot stand.

In light of our conclusion, we have no need to and will not address Ochsenfeld's challenge to the condition on *Lent* grounds.

### III. DISPOSITION

The probation conditions challenged on appeal are affirmed, except that (1) the probation condition that Ochsenfeld was "not to use, own, possess, or traffic in narcotics or dangerous drugs or knowingly associate with anyone who does" is modified to state that Ochsenfeld was "not to use, own, possess, or traffic in narcotics or controlled substances or knowingly associate with anyone who does" and (2) the condition that Ochsenfeld "must submit to such education, counseling, treatments or tests as directed by your probation officer including, but not limited to, urinalysis" is stricken, except for the provision regarding urinalysis, and the matter remanded to the trial court to consider whether or not to impose a probation condition regarding this subject matter that is consistent with this opinion.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
GOLDMAN, J.